This action, instituted to have a trust fund in the hands of the defendant R. H. Smith, properly administered, after the pleadings (87) were filed, was referred to James M. Mullen with the direction, "to hear and determine all matters of controversy in the same arising." *Page 99 
The referee made his report at Fall Term, 1886; so much of his findings of fact as is necessary to a proper understanding of the controversy and the rulings in the court below, brought up for review, is as follows:
On 21 December, 1880, Joseph J. Edmundson, having purchased a tract of land lying in Martin County and described in the deed therefor executed to him by Burton H. Spruill and wife Laura K., on the same day paid $200 of the purchase money, and gave to the said Laura K. his five several notes, under seal, for the residue, one in the sum of $500, due with accruing interest, at eight per cent on 1 October, 1881, and the other four each in the sum of $575, with like interest, due on the first day of the same month in the successive years from 1882 to 1885, inclusive. To secure the deferred installments at the same time, the vendee Edmundson reconveyed the land to the defendant Richard H. Smith, trustee, vesting in him the right and imposing an obligation in case of default in the payment of said notes or any one of them, on the request of the holder, to advertise and sell said land for cash, and requiring him, after deducting the expenses and costs attending the execution of the assumed trust out of the funds thus arising, to apply the residue "to the amount remaining unpaid upon said note or notes, with interest accrued, and the balance, if any, he shall pay to the said Joseph J. Edmundson, his heirs and assigns."
Before the maturity of these notes they were transferred to and became the said Burton H. Spruill's property.
On 15 January, 1884, the said Burton H. entered into a contract with defendants, Grandy Sons, for an advance to him of $1,500 to secure the payment whereof, as also other stipulations contained in it for the consignment to them, as commission merchants to sell, of eight bales of cotton for each $100 advanced, and the payment of (88) $1.50 for each bale deficient, he gave them his written obligation and further assigned to them as collateral security, in his deed of 22 January, of the same month, the four notes of $575 each, upon the first of which had been paid $300, and conveying also "all of his crops to be grown during the year on the Cypress Swamp Farm, in Halifax County, which the said Spruill had theretofore bought from the plaintiff, and his carts, wagons and farming implements," with the power of disposing of the property in case of a failure to comply with his contract to refund the moneys to be advanced, and for which he had also given his separate written obligation due by the first day of December of the same year.
At the time of executing these papers the plaintiff and one Mrs. Neems held a mortgage security on the Cypress Swamp Farm, on which were to *Page 100 
be grown the crops that were under the defendants' lien, amounting then to about $4,000, originally due to the plaintiff alone, whereof he had passed to Mrs. Neems about $1,100, that she then held. The said defendants had no notice of this encumbrance when the transaction with Spruill was consummated, but ascertained the fact a few days afterwards. They then declined to make further advances until assured that Spruill would not be disturbed in his possession, but permitted to proceed in the cultivation of the crop for their benefit, and this determination was early in February communicated to the plaintiff by their attorney, to which the following is his answer:
"Spruill is now in my office badly upset. I have no note due against him and cannot sell if disposed to do so, and certainly I would not sell if I could. Mrs. Neems holds one note for $1,100 now due, and she is the one to apply to, to not sell. If she does not sell there will be no sale. I could not guarantee that if sold the purchaser would charge no rent, but the fourth is all any one could charge, and it seems to me that the other three-fourths, his part, in case of a sale, together with (89) the notes you have, would be ample security for $1,500. If Grandy will advance no more than that on the crops and notes, and will hold them after paying his $1,500, advance for me, with Spruill's consent, he can have all the crops if the land should be sold, provided I bought it; and I certainly will buy it unless it should bring over four thousand dollars cash, which it will never do in this age and generation. I should be compelled to do it in self-defense. I have just agreed with Spruill that he is to convey to me all his interest in the notes you have and all his crops, subject to Grandy's lien of $1,500, and $100 more if I say so. Now if this is satisfactory to you, I will guarantee that Spruill shall not be disturbed nor his crop, until Grandy gets his money out of the crops and notes, at which time Grandy is to deliver the notes to me. I will stop the sale, or buy it if Mrs. Neems should attempt to sell."
This paper was communicated by the attorney to the defendants, and they then addressed a letter to their said attorney in these words:
"If we understand about the farm that Mr. Spruill bought of Mr. Kitchin, it stands as follows, viz.: All of Spruill's indebtedness on account of said farm is to Kitchin, except first note of $1,100 to Mrs. Neems. If Kitchin will place his notes in your hands as a guarantee that Mrs. Neems shall not sell the land, and in case she does, he will buy it, and the mortgage made to us shall not be disturbed, we think that would be safe. If Mrs. Neems sold the land, and land is worth it, we would bid enough on same through you to protect our interest. In case of sale, and Kitchin not doing as promised, forfeits the notes that *Page 101 
he will place in your hands. If this is agreeable all round, and Mr. Spruill desires it after we are paid — principal, interest, and commissions on cotton he is to ship us, we have no sort of objection to Mr. Kitchin having the Edmundson notes in our hands. This will be done of course, you advising it. We have been (as Kitchin says (90) Spruill is) `upset' entirely in statements made to us (as we understood them) to act very judiciously in this matter, and hence it is that we call on you."
On 21 February, 1884, the plaintiff addressed to the said defendants a communication in these terms:
SCOTLAND NECK, N.C. 21 February, 1884.
Messrs. C. W. Grandy Sons.
DEAR SIRS: I will see that your lien for the present year on the crop of B. H. Spruill, on the Cypress Swamp Farm, shall not be disturbed or subjected to any of the debts of said Spruill, secured by mortgage or trust on said farm, and will save you harmless on account of the same, to wit, said debts secured by said mortgage or trust.
W. H. KITCHIN.
Contemporaneously with the making the last-mentioned communication, and as a condition thereof, the plaintiff required the said Spruill to assign to the plaintiff, as a collateral indemnity in subordination to that of the defendants, and as a security for the payment of the purchase money yet due for the Cypress Swamp Farm, the four notes held by the defendant, which transfer, in writing, the said Spruill made, stipulating therein that the defendants held them for supplies only, which did not exceed $1,500 in amount. This instrument was never registered, nor its existence and contents known to defendants or their attorney until after the beginning of the present suit.
The defendants claim as due them under their contract the aggregate sum of $1,790.79, to be reduced by the net proceeds of the cotton sent to them and sold ($420.17) to the sum of $1,370.62, their demand being made up from the sum advanced, $1,500, with interest, $104.70, the sum of $21 paid their attorney, and $165 for the deficiency (91) in the number of bales of cotton to be sent to them.
On 30 September, 1885, the trustee Smith, on the demand of the other defendants, sold the land under the provisions of the deed from Edmundson to the plaintiff for $1,864.88, the net proceeds, after deducting charges, being $1,771.64, of which bid the plaintiff has paid but $1,500, and $98.24, the cost incurred in making the sale, and he *Page 102 
refuses to pay more, claiming, after the payment of the $1,500 advanced to defendants, his right to the excess under the assignment of Spruill, and also a reduction of the sum demanded by and paid to the defendants by the trustee to what is legally due them, the difference being also claimed by the plaintiff. This $1,500 payment to them was made with the plaintiff's consent.
The $500 note heretofore mentioned, was assigned before maturity, and for value, by Spruill to N.M. Lawrence, on which was due 30 September, 1885, the day when the land was sold, $324.33, and on the other four notes then due at the same time, $2,687.88.
When the loan contract between Spruill and the defendants was made, the latter had no knowledge of the note held by Lawrence against Spruill, the latter representing that the four notes passed to them were all. Soon after hearing of it, on 2 December, 1884, they purchased it from Lawrence, paying therefor $304.20, and still hold it.
The first maturing of the four assigned notes was, at the time of the assignment, in possession of W. A. Dunn, held as a collateral security for a debt owing him by Spruill, of which the defendants then knew nothing, and when informed they paid Dunn the debt due him by Spruill, with plaintiff's consent, which payment is included in the charge for advancements and constitutes part of the $1,500, and the note was delivered to them. This was previous to the registration of Spruill's mortgage to them.
The debt of Spruill to the plaintiff, secured by the mortgage (92) of the Cypress Swamp Farm, has never been paid in full, though it has been sold and the proceeds applied thereto, the residue unpaid amounting, with interest, to the date to which the computations of the other debts have been brought, to the sum of $1,482.85.
Spruill was, at the time, and ever since, has been totally insolvent.
Upon these facts the referee declared that the plaintiff is not entitled to recover; that the transaction occurring in Virginia is governed by its laws of usury, of which no evidence has been offered, and the defense itself is only open to parties to the contract and privies, and that defendants are entitled to recover of the fund in the trustee's hands, $1,457.22 and interest from 15 December, 1884, for advances, and $324.33 amount paid Lawrence, and of the plaintiff $271.64, with interest from sale and costs.
The plaintiff filed numerous exceptions to the report, of which two only were sustained, and it was recommitted for reformation. The referee accordingly made a second report, in which, correcting the former, he finds as follows:
That the communication made to the defendants when they declined to make further advances, and which led to their resumption, was *Page 103 
transmitted to them with the plaintiff's guarantee, and thus they acquired their only information upon that point. The referee therefore rules as before, in reference to the defendant's right to the funds in the trustee's hands, and further, their right to recover of the plaintiff $191.26, on account of the note obtained from Lawrence, and also of the plaintiff $164.84, with interest at 8 per cent from the day of sale, and to judgment for the resale of the lands, to make up the deficiency in the first sale. The reformed report was excepted to by both parties, and their exceptions are as follows:
Plaintiff's exceptions to the reformed report.
The plaintiff excepts to the second reformed report of the referee herein filed for the following reasons:
1. Because he finds, as a conclusion of law, that the defendants, (93) C. W. Grandy Sons, are entitled to receive of the proceeds of the land the sum of $1,457.22, on account of advances, etc., and $191.26 on account of the note purchased by them from N.M. Lawrence.
2. Because he finds that the defendants Grandy Sons, are entitled to recover of the plaintiff the sum of $164.84, with 8 per cent interest thereon from 30 September, 1885, and costs.
3. Because he does not find, as a conclusion of law from the facts found, that the plaintiff is entitled to receive of the net proceeds of the land sold the sum of $319.58.
4. Because he does not find that the plaintiff is entitled to receive of the proceeds of the land sold by Smith the sum of $516.27.
The defendants, C. W. Grandy Sons, except to the reformed report of the referee, and for cause of exception, allege:
1. That he did not find that the defendants are entitled to recover of the plaintiff the sum of $271.67, with 8 per cent interest from 30 September, 1885.
2. That he fails to find that the defendants are entitled to recover of the plaintiff $324.33 and 8 per cent interest thereon, on account of the note purchased by them from N.M. Lawrence, and find that he is only entitled to recover $191.26.
3. That he finds that the defendants are only entitled to recover of the plaintiff the sum of $164.84 and 8 per cent interest from 30 September, 1885.
5. That he refused to admit as evidence letters of T. N. Hill to C. W. Grandy Sons, dated 6 February, 1884.
Thereupon the court rendered the following judgment:
This cause coming on to be heard, and the former judgment of this court upon the first report of the referee being considered, and the reformed report of the referee made in obedience to said (94) *Page 104 
judgment, with the exceptions thereto filed being considered, it is now adjudged by the court:
1. That the first exception of the plaintiff to the reformed report be sustained, so far as it complains as follows: "Because he finds as a conclusion of law that the defendants Grandy Sons, are entitled to receive of the proceeds of the lands $1,457.22, on account of advances, etc." The remainder of this exception is overruled.
2. That exception two of the plaintiff be sustained.
3. That the third and fourth exceptions of the plaintiff be overruled.
4. That exceptions one, two, three, four and five of the defendants be overruled.
5. And it appearing from the report of the referee that the net proceeds of the land left in the defendant Smith's hands after paying commissions and expenses was $1,771.64, and that the entire amount of the notes secured on the land sold was $3,012.21, that of this sum $2,687.88 was due on the Spruill notes mortgaged to Grandy, and that $324.33 was due on the Spruill note purchased by Grandy Sons from N.M. Lawrence, and his Honor Judge Avery having held by his rulings on the first report of the referee that these notes were entitled to share ratably in the proceeds of the land, and the court now being of opinion on the coming in of the reformed report that the defendants Grandy Sons are not entitled to collect the sum of $165.00, being the amount of damages charged for nonshipment of cotton, and of the notes mortgaged to them by Spruill as against the plaintiff, it is adjudged that the defendants Grandy Sons are entitled to receive of the proceeds of the land sold the sum of fourteen hundred and seventy-three dollars and fifty-seven cents, being $191.26 on account of the note purchased of Lawrence and $1,283.31 on account of notes mortgaged by Spruill.
And it further appearing that the plaintiff was the purchaser (95) of the land sold by Smith, trustee, and that he has only paid the commissions and expenses of sale and the sum of $1,500 which he paid over to Grandy Sons, and that Grandy Sons were paid $26.43 too much, it is adjudged that the plaintiff recover of the defendants Grandy Sons the sum of twenty-six dollars and forty-three cents, and the cost of this action to be taxed by the clerk. And this judgment will bear interest from 30 October, 1885, the date of the sale of the land.
From this judgment the defendants Grandy Sons appealed, assigning the following errors:
1. That he sustained exception one of the plaintiff to the reformed report of the referee so far as it sets forth as follows: "Because he finds *Page 105 
as a conclusion of law that the defendants Grandy Sons are entitled to receive of the proceeds of the lands $1,457.22 on account of advances, etc."
2. That he sustains exception two of the plaintiff.
3. That he overruled exceptions one, two, three, four and five of the defendants C. W. Grandy Sons.
4. That he holds that C. W. Grandy Sons were not entitled to collect the sum of $165 damages for nonshipment of cotton out of the notes mortgaged to them.
5. That he holds that the defendants C. W. Grandy Sons were only entitled to secure $1,473.57, being $191.26 on account of the note purchased by Lawrence and $1,282.31 on account of the notes mortgaged to Spruill.
6. That he finds that the plaintiff has overpaid these defendants $26.43 too much.
7. That he holds that the plaintiff recover of these defendants said sum of $26.43, with interest from 30 October, 1885.
8. That he holds that the plaintiff recover of said defendants the cost of this action.
9. That he does not find that the defendants, C. W. Grandy Sons, are entitled to recover two hundred and seventy-one dollars and sixty-four cents, with eight per cent interest from 30 September, (96) 1885, the amount found due them by the original report.
10. That he does not find that said C. W. Grandy Sons are entitled to recover $164.84, with eight percent interest from 30 September, 1885, the amount found due them in the reformed report.
That he does not hold that the plaintiff pay the cost.
While the exceptions are very many in number, there are but few rulings involved which we are called on to consider.
1. The appellants' objection to the ruling that sustains the plaintiff's first exception to the referee's first report in reference to the time of transmitting, with the guarantee, the paper of the defendants' attorney, setting out the terms on which it is given, involves a matter of fact and is not subject to review in this Court, when there is any evidence to support the finding.
2. The second has reference to the sustaining the plaintiff's exception to the finding that the defendants are entitled to be paid out of the *Page 106 
proceeds of sale of the land, not only $1,457.22, the amount advanced, but also the sum of $324.33 paid for the note held by Lawrence.
This raises an inquiry into the effect upon the liability incurred under the plaintiff's guarantee by the contemporaneous transmission to the defendants of the verbal communication of plaintiff to their attorney reduced to writing, and forwarded to them.
We think, most manifestly, the latter paper must be considered between the contracting parties as a qualification or condition of (97) the plaintiff's undertaking to protect the defendants from any claim upon the crops growing out of the incumbrance upon the farm, or interference with Spruill while making them.
As Spruill had assigned, subordinate to the assignment to the appellants, his interest in the notes held by them, the plaintiff, in waiving any claim to priority in the crops and insuring Spruill uninterrupted cultivation in that communication to them, uses these words:
"I have just agreed with Spruill that he is to convey to me all his interest in the notes you have, and all his crops subject to Grandy's lien of $1,500, and $100 more, if I say so. Now, if this is satisfactory to you, I will guarantee that Spruill shall not be disturbed, nor his crop, until Grandy gets his money out of the crops and notes, at which time Grandy is to deliver the notes to me. I will stop the sale or buy, if Mrs. Neems should attempt to sell."
The guarantee was accepted on these terms, and most clearly it limits the claim of the defendant upon the notes and crops to $1,500, and excludes all above that sum. It cannot be necessary to refer to authority for the proposition that papers executed at the same time or acted upon conjointly, together constitute the contract, and ascertain the respective relations and obligations of the parties to it. These exceptions being overruled, the defendants file others to the amended report:
1. For that the referee does not find the appellants to be entitled to the unpaid residue of the purchase money.
2. Nor entitled to recover of the plaintiff the amount ($324.33) paid to Lawrence, but only ($164.84) part thereof.
3. Nor to recover of plaintiff a larger sum than $164.84.
To the rulings of the judge they excepted also:
For that he disallowed the sum of $165, claimed for the deficient consignments of cotton.
 For that he denies their right to the sum found due in the first report, to wit, $265.64.
(98) For that he does not allow them the sum ($164.84) ascertained to be due in the reformed report. *Page 107 
For that he adjudges due plaintiff's $26.43, paid the defendants out of the sale above, what was due them, and awards costs of suit against them.
While, in our opinion, the notes given on the purchase by Edmondson are, under the terms of the trust deed, whether due or not, entitled as such, to share in the proceeds of the sale, the deed so directing, and the payment to Edmundson of any excess, it is evident this latter was not intended to exclude such as were not matured, and thus to withdraw the security from them, and such is the meaning of the language used; yet the sum to be received by the defendants was, under their contract with the plaintiff, not to exceed $1,500, the excess from these pledged securities belonging to him.
The item of $165, claimed for damages for the deficient cotton, while not allowable to affect the plaintiff's rights, was, we think, under the findings, a proper charge against Spruill.
In Arrington v. Goodrich, 95 N.C. 462, where the point of the usurious character of such a provision in a mortgage deed came before the Court, but was not necessary to be passed on in determining the appeal, as it is not now, since we do not know that a usurious taint is, by the law of Virginia, thus imparted to the contract, and the debtor does not controvert his liability upon such ground, and for these reasons we pass it by without an expression of opinion as to the effect of such a provision under our law. Whether in law it must be declared to be usurious in the absence of other evidence of illegal intent as a means of evading the condemnation of the law relating to the taking of usurious interest, we shall not undertake to decide.
But the ruling of the Court is, that this sum is not a just charge against the plaintiff, inasmuch as the four notes, not to (99) exceed $1,500, were alone to be provided for, and subject to the lien of that sum only, were to belong to the plaintiff. The appellants having received in excess of what those notes are entitled to, out of the securities provided for their discharge, the sum of $26.43, it is correctly ruled that they are liable therefor to him.
It must be declared there is no error in the ruling complained of by the appellant, and the judgment is
Affirmed.
Cited: Whitehead v. Morrill, 108 N.C. 68; Kiger v. Harmon, 113 N.C. 407;Kerr v. Sanders, 122 N.C. 636; Gore v. Davis, 124 N.C. 235. *Page 108