PHILIPPI COLLIERIES CO. v. THOMPSON.

(Circuit Court of Appeals. Fourth Circuit. May 6, 1908.)

No. 758.

1. **VENDOR AND PURCHASER—CONSTRUCTION OF CONTRACT—CONSTRUING INSTRUMENTS TOGETHER.**

Where a deed to property and notes for a part of the purchase money are executed at the same time, they should be regarded as one instrument and read together.

2. **SAME—INTEREST PAYMENTS—ENFORCEMENT OF LIEN RESERVED IN DEED.**

A deed to property, executed in September, 1905, after providing for a deferred payment of purchase money on September 1, 1906, with interest, contained the following further provisions: "And the remaining sum * * * is to be paid in nine equal annual payments * * * from September 1, 1906, with interest on said annual payments from September 1, 1905, at the rate of 6 per cent., payable annually, as evidenced by their negotiable promissory notes for said several sums bearing even date herewith, * * * to secure which deferred payments a vendor's lien is hereby expressly retained. * * * It is expressly understood that, in case default be made in the payment of any of said deferred payments of purchase money or the accrued annual interest when due, then

and in that event all remaining unpaid payments shall be immediately due and payable." The notes were severally made payable September 1, 1907, and each year thereafter, "with interest at the rate of 6 per centum per annum from September 1, 1905, until paid." *Held* that, construing the deed and notes together as one contract, the interest on the entire amount of the deferred payments was payable annually, and that on the failure of the purchaser to pay the first year's interest on September 1, 1906, the vendor was entitled to declare the entire amount due and to foreclose the lien therefor; such suit being based upon the deed, and not upon the notes.

Appeal from the Circuit Court of the United States for the Northern District of West Virginia, at Clarksburg.

Wm. A. Glasgow, Jr. (John Bassel and Edward W. O'Meara, on the briefs), for appellant.

John W. Davis (Ira E. Robinson, Warder & Robinson, and Davis & Davis, on the briefs), for appellee.

Before PRITCHARD, Circuit Judge, and WADDILL and Mc-DOWELL, District Judges.

PRITCHARD, Circuit Judge. This is an appeal from a decree of the Circuit Court of the United States for the Northern District of West Virginia. On the 22d day of September, 1905, Albert Thompson and wife sold and conveyed to the Philippi Collieries Company certain coal property, with the improvements thereon, in Barbour county, W. Va. The price which the purchaser agreed to pay was $400,000, and of that sum $50,000 was paid in cash and the remainder to be paid as follows: Twenty-five thousand dollars, with interest at 6 per cent., on March 1, 1906; $25,000, with interest at 6 per cent., on September 1, 1906; "and the remaining sum of three hundred thousand dollars ($300,000) is to be paid in nine (9) equal annual payments of thirty-three thousand three hundred and thirty-three dollars and thirty-three cents ($33,333.33) each, from September 1, 1906, with interest on said annual payments from September 1, 1905, at six per cent. (6 per cent.), payable annually, as evidenced by their negotiable promissory notes for said several sums, bearing even date herewith and payable at the First National Bank of Philippi, Philippi, W. Va., to secure which deferred payments a vendor's lien is hereby expressly retained upon all the property by this deed conveyed." On March 1, 1906, the purchaser (appellant) paid the note for $25,000 then due, with interest at 6 per cent. from September 1, 1905. On September 1, 1906, the purchaser paid the note for $25,000 then due, with interest at 6 per cent. from September 1, 1905. After payment by the purchaser of $100,000 of principal and $2,250 of interest, on account of the price of the property, on September 1, 1906, the vendor (appellee) demanded that, in addition to the payment of the note then due, the purchaser should pay $18,000, the interest claimed from September 1, 1905, to September 1, 1906, one year, on $300,000, the remainder of the purchase money evidenced by the nine negotiable promissory notes above mentioned. The purchaser declined to pay this $18,000 then, on the ground that he was only required to pay the interest each year upon the note becoming due. The vendor claimed that the purchaser

was in default by reason of failing to pay the $18,000 above mentioned, and by reason thereof that the entire balance of purchase money, to wit, $300,000, with interest thereon from September 1, 1905, amounting to $18,000 became due and payable.

The important part of the deed, so far as the questions presented by this record are concerned, is to be found on page 47, as follows:

"The residue of said purchase money, to wit, three hundred and fifty thousand dollars ($350,000), is to be paid as follows, to wit: Twenty-five thousand dollars ($25,000) is to be paid on the 1st day of March, 1906, with interest at six per cent. (6 per cent.) from September 1, 1905; twenty-five thousand dollars ($25,000) on September 1, 1906, with interest at six per cent. (6 per cent.) from September 1, 1905. And the remaining sum of three hundred thousand dollars ($300,000) is to be paid in nine (9) equal annual payments. of thirty-three thousand three hundred and thirty-three dollars and thirty-three cents ($33,333.33) each, from September 1, 1906, with interest on said annual payments from September 1, 1905, at six per cent. (6 per cent.), payable annually, as evidenced by their negotiable promissory notes for said several sums, bearing even date herewith and payable at the First National Bank of Philippi, Philippi, W. Va., to secure which deferred payments a vendor's lien is hereby expressly retained upon all the property by this deed conveyed. It is expressly understood that in case default be made in the payment of any of said deferred payments of purchase money, or the accrued annual interest when due, then and in that event all remaining unpaid payments shall be due and payable," etc.

The nine notes referred to in the deed as evidence of the payments of principal and interest to be made were uniform and of the following form:

"No.

"$33,333.33/100.                    Philippi, W. Va., September 22, 1905.

"On the 1st day of September, 1907, after date, with interest at the rate of six per centum per annum from September 1, 1905, until paid, Philippi Collieries Company promises to pay the order of Albert Thompson thirty-three thousand three hundred and thirty-three and 33/100 dollars, for value received, negotiable and payable at the First National Bank of Philippi, West Virginia. This note is one of eleven, two of which are for twenty-five thousand dollars each, and the remaining nine for thirty-three thousand three hundred and thirty-three and one-third dollars each, the first two payable in six and twelve months from September 1, 1905, respectively, and the other nine in two, three, four, five, six, seven, eight, nine, and ten years from said September 1, 1905, respectively, with interest from that date, negotiable and payable at the First National Bank of Philippi, West Virginia, and secured by a vendor's lien retained in the deed this day executed by Albert Thompson to said Thompson to said corporation, the Philippi Collieries Company, for certain lands, coal and other property situated in Barbour county. West Virginia, and the right is expressly reserved in each and all of said notes to pay the whole number thereof and the amount due thereon at any time upon the maker giving three months' notice to said Thompson, or his assignee of its purpose so to do.

                    "Philippi Collieries Company,
                         "By Robert G. Young, Its President.
"Attest:  Albert Blackburne, Secretary."

On January 21, 1907, Albert Thompson filed his bill against the Philippi Collieries Company in the Circuit Court of the United States for the Northern District of West Virginia to enforce the vendor's lien reserved in his deed to the Philippi Collieries Company, alleging that by reason of the purchaser's failure to pay the $18,000 of interest on the $300,000 of purchase money on September 1, 1906, the entire

$300,000, with interest from September 1, 1905, became then due and payable. On February 20, 1907, the defendant answered, and, proof having been taken on other points presented by the bill, on the 26th of February, 1907, a decree was entered by the Circuit Court, declaring that by reason of the failure of the purchaser to pay, on the 1st of September, 1906, the $18,000 of interest then accrued on the $300,-000 balance of purchase money, evidenced by the nine notes, payable annually on the 1st day of September, from 1907 to 1915, both inclusive, the entire balance of the purchase money became due and payable on September 1, 1906. The decree required the defendant to pay to the plaintiff the sum of $326,750, with interest thereon from February 26, 1907, and, unless the same was paid "within the period of ninety (90) days next following the date of" the decree, the special masters therein appointed were required to sell the property conveyed to the Philippi Collieries Company by Albert Thompson and apply the proceeds to the discharge of the vendor's lien aforesaid. From this decree the appellant, the Philippi Collieries Company, appealed, on the ground that up to the 1st of September, 1906, it had paid to Thompson the sum of $75,000; that on that day a further note of $25,000, with interest from September 1, 1905, became due and payable, and was paid by it; and that the interest upon the remaining nine notes, amounting in all to $300,000, was not then due and payable, and that the court below erred in holding that any part of the interest upon said notes became "due and payable" on September 1, 1906.

The question involved in this controversy is as to whether the interest on the several notes executed by appellant becomes due and payable annually. In order to correctly determine this question, it becomes necessary to consider the transaction between the parties in its entirety. This is the only means by which we can arrive at a correct conclusion as to the intention of the parties at the time the contract was consummated. The language of that portion of the deed, or vendor's lien, which relates to the matters at issue, reads as follows:

"And the remaining sum * * * is to be paid in nine annual payments * * * from September 1, 1906, with interest on said annual payments from September 1, 1906, with interest on said annual payments from September 1, 1905, at the rate of 6 per cent., payable annually. * * * It is expressly understood that in case default be made in the payment of any of said deferred payments of purchase money, or the accrued annual interest when due, then and in that event all remaining unpaid payments shall be immediately due and payable," etc.

Thus it is expressly provided, first, that, if default shall be made of any deferred payments of the purchase money, in that event all the remaining payments shall be due and payable. It is also provided as a condition that, when the accrued annual interest shall become due and default shall be made in the payment of the same, in that event all the remaining unpaid installments shall become due and payable. If these notes represented the entire contract, the contention of appellant that the interest on the same is not due until the maturity of each note would undoubtedly be true; but it must be borne in mind that at the time the notes were executed the deed was also executed, and that the execution of the notes with full knowledge of the provisions

contained in the deed had the effect of writing into the notes the provisions of the deed, thereby making them a part of the contract between the parties. The acceptance of the deed by the grantee made it a complete contract, and the parties are bound by all the provisions and covenants which it contains, and are affected with notice of them.

It is a well-established rule of construction that written instruments relating to a particular transaction should be construed so as to give force to the entire agreement and in order that each provision of the same, if possible, may prevail. In the case of Low et al. v. Blackford et al., 87 Fed. 392, 31 C. C. A. 15, in the syllabus, it is stated:

"A mortgage and bonds and coupons secured thereby are to be construed as one contract."

Also in the case of Brewer v. Penn Mutual Life Ins. Co., 94 Fed. 347, 36 C. C. A. 289, it is said:

"Where notes and a deed of trust securing the same are executed at the same time, they should be regarded as one instrument and read together."

In the case of Kitchin v. Grandy, 101 N. C. 97, 7 S. E. 668, among other things, it is stated:

"The guaranty was accepted on these terms, and most clearly it limits the claim of the defendant upon the notes and crops to $1,500, and excludes all above that sum. It cannot be necessary to refer to authority for the proposition that papers executed at the same time, or acted upon cojointly, together constitute the contract, and ascertain the respective relations and obligations of the parties to it."

The following cases fully sustain this view of the matter:

"Where a deed of trust and mortgage are executed at the same time to secure the same notes, they should be construed as one instrument." Wheeler & Wilson Mfg. Co. v. Howard (C. C.) 28 Fed. 741.

"The decided weight of the opinion in this country is that a note and mortgage executed at the same time and as one transaction are to be construed together, and so far as possible construed as one instrument." Swearingen v. Lahner, 93 Iowa, 147, 61 N. W. 431, 26 L. R. A. 765, 57 Am. St. Rep. 261.

"The mortgage may describe the note as well, and thus qualify the terms of the note. For instance, where a note was given payable in five years from date, with interest at 10 per cent., and at the same time a mortgage was given to secure the payment of the note, in which it was stipulated that the interest should be 'payable annually,' the agreement was held to be that interest at 10 per cent. should be payable annually, and that foreclosure might be had for the nonpayment of interest." 1 Jones on Mortgages, § 71.

"Where a note is secured by mortgage, and there is a provision in the mortgage not contained in the note, the mortgage will control." Daniel on Negotiable Instruments, § 835.

"A note and a mortgage securing the same, when executed contemporaneously, are to be construed as constituting one contract, and the stipulations of the mortgage with reference to the maturity of the debt because of a failure to pay interest when due will be given effect, so as to cause the note to become due and payable before the time expressed on its face." Evans v. Baker, 5 Kan. App. 68, 47 Pac. 314.

The principles enunciated in the foregoing cases fully sustain the contention of counsel for the appellee in the case at bar. The notes being silent as to when interest shall become due, it is well settled that the provisions of the mortgage or vendor's lien should control. There is nothing contained in the vendor's lien inconsistent with the conditions contained in the notes. It is provided in the notes that interest

on the same shall be paid at the rate of 6 per cent. per annum, and it is expressly provided in the deed that the payments shall be made annually, and that in case of default in the payment of interest annually, or of principal at maturity, the whole amount of the note shall become due and payable. The deed, from the very nature of the transaction, is controlling, especially in view of the fact that the notes are silent as to the time of payment of interest. The remedy afforded the vendee upon the payment of the amount due the vendor is contained in the deed, which is in the nature of an agreement to convey title to the premises when the several amounts as evidenced by the notes shall have been paid.

Appellant had full knowledge of the provisions contained in the deed as to the payment of annual interest at the time the notes were executed, and it necessarily follows that the execution and delivery of the notes to the vendor, under such circumstances, was in the nature of an acceptance of the terms contained in the deed as to the time when the interest should become due and payable. The vendor, on the one hand, contracted with the vendee that upon the happening of certain conditions, to wit, the payment of the interest annually as it became due and the payment of the notes at maturity, he would make a good and sufficient title to the premises in question. The vendee, on the other hand, executed the notes in question and agreed to pay the principal at the times specified therein, and made no provision as to the time of the payment of interest, thereby assenting to the provisions of the deed with respect to the payment of the same as a part of the contract between the parties. The notes are simply evidence of indebtedness, and beyond this no special importance in a case like the one now before us can be attached to them.

This is not an action at law based upon the notes, or any of them, but is a suit in equity, predicated upon the deed, for the purpose of enforcing a lien which it provides in accordance with the terms of such deed, or vendor's lien, by which this lien was created. The vendor, having reserved this lien for his protection, has elected to come into a court of equity for the purpose of enforcing the remedy therein provided; the notes being used simply for the purpose of indicating the amount of the indebtedness and nothing more. The vendee, at the time of the purchase of the property in question, with full knowledge of the provisions of the lien reserved by the vendor, acquiesced in the same. Therefore the only question before us is as to whether there has been a compliance on the part of the vendee with the terms of the instrument upon which the vendee relies for the enforcement of his lien, and, it appearing that the stipulations of the deed have not been complied with, it becomes the duty of the court to enforce the same by proper decree.

We have carefully considered the case of Railway v. Sprague, 103 U. S. 756, 26 L. Ed. 554, and are of opinion that it does not apply to the case at bar. There is an obvious distinction between the facts in that case and the circumstances under which the vendor's lien was retained in this instance. There a mortgage was executed for the purpose of securing the payment of the bonds described on the face of

the mortgage. In that case the bonds which were intended to be put in circulation on the market constituted the original and terminating contract, and it was the intention of the parties, by the execution of the mortgage, to provide the means by which the payment of the same was to be secured. In a case like that, where notes or bonds are issued for the purpose of placing the same in circulation, it is the policy of the law to treat the holders of the same as innocent purchasers, and as such it would be manifestly unfair to hold that they had notice of any provision not appearing on the face of such instruments. In the case of Coles v. Withers, 33 Grat. (Va.) 195, the court clearly draws the distinction between securities of the former and latter classes in the following language:

"Indeed, it may be a question whether a reserved lien is not of a higher nature than a mere mortgage security. In many cases the mortgage is treated as a mere incident to the debt, whereas the lien reserved is an express charge inherent by its nature upon the land, which, in equity, is a natural primary fund for its payment. However that may be, a vendor who reserves a lien upon the land, and takes also the bond of the vendee for the purchase money, has two securities, to either of which he may resort at his pleasure. The lien is a security not for the bond, but for the debt. Clearly, therefore, the mere cancellation or the surrender of the bond cannot extinguish the debt, and the lien given for its payment, unless the transaction manifestly and plainly was so intended. So long as the debt exists, the court will never presume the chief security taken for its payment has been surrendered, without satisfaction, unless upon the clearest and most convincing testimony."

And further in the opinion in the same case it is said:

"These securities should not be confounded with mere personal securities, or obligations for the payment of money of any class or grade whatever. A bond, promissory note, or a simple contract for the payment of money in any shape or form is a personal contract, which surely cannot, at law or in equity, be assimilated to or governed by the principles applicable to a mortgage of any description. The plaintiffs do not ask to have their specialty or simple contract enforced as a means of obtaining payment from their debtors. They are here as vendors against the defendant as their vendee, and they claim the benefit of the lien they hold as an incident to that relationship."

For the reasons herein stated, the judgment of the court below is affirmed.

Affirmed.

WADDILL, District Judge (concurring). I concur in the result reached by the court, but base my conclusion upon the fact that this is a proceeding to enforce a vendor's lien for unpaid purchase money for property sold, expressly reserved upon the face of the deed or contract of conveyance by the vendor. In such case, where there is uncertainty as to the meaning of the undertaking regarding the time of payment of interest upon arrearages of the purchase money, the conveyance, constituting the vendee's muniment of title, should be looked to to elucidate the ambiguity, and control in the ascertainment of the parties' rights thereunder, rather than any note, bond, or other evidence of indebtedness given by the vendee for the payment of such unpaid purchase money. Coles v. Withers, 33 Grat. (Va.) 186, 195, 196, and cases cited. In the ordinary foreclosure suit, or suit to enforce the lien of a mortgage, trust deed, or other security upon prop-

erty, executed by the debtor, or mortgagor, or lienor, for the purpose of securing payment of obligations, whether in the shape of mortgage bonds or notes, or other evidence of debt, in case of ambiguity in the terms of the mortgage, trust deed, or other obligation so given to secure such indebtedness, as respects the payment of interest thereunder, I have no doubt that the evidence of debt thus given under an instrument in the hands of the holder thereof would control where, as in this case, the time of payment of interest is explicitly stated in the evidence of debt. Railway Co. v. Sprague, 103 U. S. 756, 26 L. Ed. 554. A different rule doubtless prevails if the time of payment of interest in the evidence of debt is not clear and explicit; but where it is, as here, under the ordinary mortgage or trust deed, it, and not the instrument securing the same, should control.