## UNITED STATES TOBACCO CO. v. AMERICAN TOBACCO CO. et al.

(Circuit Court, S. D. New York. July 10, 1908.)

1. MONOPOLIES — RESTRAINT IN INTERSTATE COMMERCE—STATUTES—MANUFACTURERS.

Act Cong. July 2, 1890, c 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), provides: That every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is illegal; that every person who shall monopolize, or attempt to monopolize, or combine, or conspire with any other person or persons to monopolize, any part of the trade or commerce among the several states or with foreign nations, shall be guilty of a misdemeanor; and that any person injured in his business or property by anything forbidden by the act may sue therefor. *Held*, that a mere agreement to monopolize the manufacture of an article of commerce is not prohibited, but that, in order to be within the act, the contract, combination, or conspiracy must be in itself in restraint of trade or commerce among the several states or with foreign nations, or, if a monopoly or attempted monopoly or combination or conspiracy to monopolize, it must be of some part of the trade or commerce among the several states or foreign nations.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Monopolies, §§ 11.]

2. SAME—SCOPE OF AGREEMENT.

An agreement between defendants, manufacturers of licorice paste used in the manufacture of tobacco, provided that there should be no competi-

tion in price between them, and they, from time to time, agreed and maintained arbitrary and noncompetitive prices for paste at which it was actually sold in interstate commerce. Defendants also agreed with and induced certain competitors in the business to establish and maintain arbitrary and noncompetitive prices in excess of the normal and reasonable prices that would otherwise have prevailed, and also apportioned the interstate trade and commerce in such substance and of the customers of two of the manufacturers, arbitrarily fixing the amount of business they should do, and also so managed and agreed with another that the latter should only sell 1,000,000 pounds of paste during 1904, and not more than 50,000 pounds additional during each year for five years from December 31, 1903, and, if he sold more, he should pay to another of the defendant companies certain sums approximately equal to the profits of the excess. *Held*, that such agreement constituted an unlawful interference with interstate commerce, prohibited by Act Cong. July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), declaring that every contract, combination, or conspiracy in restraint of trade among the several states or with foreign nations should be illegal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Monopolies, § 13.]

Demurrers to Complaint. Action for treble damages under the provisions of Act Cong. July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), entitled "An act to protect trade and commerce against unlawful restraints and monopolies."

Harlan F. Stone, for plaintiff.

A. H. Burroughs, for defendants American Tobacco Company and MacAndrews & Forbes Company.

Nicoll, Anable, Lindsay and Fuller (De Lancey Nicoll, of counsel), for defendants James B. Duke and Karl Jungbluth.

RAY, District Judge. The plaintiff is a Virginia corporation engaged in the manufacture of plug and smoking tobacco and selling said articles of merchandise in the several states of the United States and in foreign countries and engaged in commerce among the said states. The American Tobacco Company, organized in 1904, is a New Jersey corporation, and defendant James B. Duke its president. The MacAndrews & Forbes Company is a New Jersey corporation, and defendant Karl Jungbluth is its president. The J. S. Young Company is a marine corporation, organized in December, 1903, and Howard E. Young is its president

The American Tobacco Company is the result of the merger of three companies, viz., Continental Tobacco Company, Consolidated Tobacco Company, and the American Tobacco Company about October 1, 1904. This merger took place under the laws of the state of New Jersey and pursuant to an agreement, and all the debts, duties, and liabilities of the Continental Tobacco Company attached to the defendant American Tobacco Company. Duke, from December 8, 1893, was the president of the Continental Company and has been president of the American Company since its organization, and he and these companies are and have been engaged in carrying on business in interstate commerce in tobacco and articles manufactured therefrom. From about December 8, 1903, the defendants, MacAndrews & Forbes Company and said J. S. Young Company and their presidents, respectively, were engaged in carrying on business as manufacturers and dealers in licorice paste,

a valuable article of merchandise, useful and necessary in the manufacture of plug and smoking tobacco.    These last-named companies had factories for its manufacture in different states.    These companies and their presidents by authority of the companies sold large quantities of such licorice paste to manufacturers of plug and smoking tobacco, including the plaintiff company, throughout the United States, and in pursuance of the sales shipped same from their said factories to such manufacturers in other states of the United States than those wherein the said factories were situated.    The said last-named companies and their presidents controlled more than 85 per cent. of the interstate business in such licorice paste of which the MacAndrews & Forbes Company had and controlled about nine-tenths and the said J. S. Young Company about one-tenth.    Prior to the consolidation, etc., these companies were competitors in business, and the plaintiff charges that they would have continued to be competitors but for the alleged unlawful combination, conspiracy, contract, and agreement set out in the complaint, as follows:

"(a) Competition as to the price at which the said licorice paste was during said period sold and delivered by the said MacAndrews & Forbes Company and said J. S. Young Company, as between said corporation defendants and among them severally and their several competitors in said interstate business, trade, and commerce, was under the direction and control of the Continental Tobacco Company and of defendants, the American Tobacco Company and James B. Duke, as hereinafter stated, prevented and destroyed by the defendants herein agreeing among themselves that there should be no such competition, by the said defendants from time to time agreeing upon establishing, fixing, and maintaining arbitrary and noncompetitive prices for the said licorice paste so sold and delivered by the said defendants, MacAndrews & Forbes Company and J S. Young Company and their several competitors in said interstate business, trade, and commerce as aforesaid, by their selling and delivering such licorice paste in such business, trade, and commerce at such arbitrary and noncompetitive prices, and by their agreeing with and inducing certain of the competitors of the said MacAndrews & Forbes Company and said J. S. Young Company, to wit, one John D. Lewis of Providence, R. I., engaged throughout said period in the manufacture and sale of and in interstate commerce in said licorice paste in the United States, and the Weaver & Sterry Company, Ltd., of New York City, N. Y., engaged throughout said period in the manufacture and sale of and in interstate commerce in said licorice paste in the United States, likewise to establish and maintain arbitrary and noncompetitive prices for said licorice paste, in said interstate business, trade, and commerce of such competitors, which said prices so agreed upon, established, fixed, and maintained by the defendants herein, and by said competitors, were greatly in excess of the prices which would at such times and during said period have prevailed for the said licorice paste in said interstate business, trade, and commerce of the said MacAndrews & Forbes Company and J. S. Young Company and their said competitors or any of them, and in excess of reasonable and normal prices for such licorice paste which would have prevailed in such business, trade, and commerce if said defendants had not engaged in said unlawful combination, conspiracy, contract, and agreement in restraint of said interstate trade and commerce, and if they had not attempted to restrain and monopolize said trade and commerce as aforesaid.

"(b) A division and apportionment of said interstate business, trade, and commerce, and of the customers of the said MacAndrews & Forbes Company and the said J. S. Young Company were made under and pursuant to the direction and control of the Continental Tobacco Company and of defendants, the American Tobacco Company and James B. Duke, as hereafter set forth, between the MacAndrews & Forbes Company and J. S. Young Company, by the terms of which division and apportionment as agreed upon by the Con-

tinental Tobacco Company and the defendants herein, and each of them, the customers with whom each of the said defendant corporations, the MacAndrews & Forbes Company and the J. S. Young Company, should deal, and to whom the said corporations should sell such licorice paste so arbitrarily fixed and agreed upon and the amount of the profits which the said defendant, J. S. Young Company, should be allowed from the total business carried on by the said defendants, MacAndrews & Forbes Company and J. S. Young Company, was arbitrarily fixed, determined, and agreed upon by said Continental Tobacco Company and defendants.

"(c) The defendants herein, and each of them, under and pursuant to the control and direction of the Continental Tobacco Company and defendants, the American Tobacco Company and James B. Duke, as hereinafter set forth, so contrived and managed and agreed that the said John D. Lewis contracted and agreed with the said J. S. Young Company that he would not sell more than 1,000,000 pounds of such licorice paste during the year 1904, nor more than 50,000 pounds additional during each year for five years from December 31, 1903, so that it was agreed that the total product of sale of John D. Lewis should be not more than 1,200,000 pounds during the year 1908; it being provided by the said agreement that if he, the said John D. Lewis, should sell more than said amounts during said years respectively, he was to pay to the said J. S. Young Company an amount of money approximately equal to his profits upon the quantity sold by him in excess of such amounts respectively, and that he should establish and maintain arbitrary and noncompetitive prices as hereinbefore set forth for all licorice paste sold by him, the terms and conditions of which said agreement were during said period duly complied with by the said John B. Lewis by his selling large quantities of such licorice paste at such prices.

"(d) The terms and conditions upon and under which during the said period sales of such licorice paste were made by the said MacAndrews & Forbes Company and J. S. Young Company in respect to discounts and times of payment for and of delivery of such licorice paste, and with respect to the form and character of all contracts under which the same was sold, were made noncompetitive as between said MacAndrews & Forbes Company and J. S. Young Company in said interstate business, trade, and commerce, pursuant to agreement by and between the Continental Tobacco Company and the defendants, and each of them, as hereafter set forth."

The complaint then alleges that the said conspiracy, combination, contract, and agreement was brought about by the agencies set forth in the complaint, viz.:

"In 1902 the Continental Tobacco Company acquired control of the defendant MacAndrews & Forbes Company through ownership of a majority of the capital stock of the MacAndrews & Forbes Company having voting power, and thereupon said Continental Tobacco Company and defendant James B. Duke, in the attempt to establish a monopoly in the business of manufacturing and selling licorice paste in the United States, and in the aid of the establishment by the said Continental Tobacco Company of a monopoly in the manufacture and sale of tobacco and tobacco products in the United States, acquired through said MacAndrews & Forbes Company control of several competitors in the business of manufacturing licorice paste, to wit, the Mellor & Rittenhouse Company of Camden, N. J., and the Stamford Manufacturing Company of Stamford, Conn., so that in the summer of 1902 the principal manufacturers of licorice paste, who remained independent of the MacAndrews & Forbes Company and the Continental Tobacco Company, and carrying on business in competition with the said MacAndrews & Forbes Company, were the J. S. Young Company, a corporation organized under the laws of the state of New Jersey (predecessor of defendant J. S. Young Company) and the said John D. Lewis, and these the MacAndrews & Forbes Company in agreement with the Continental Tobacco Company and said James B. Duke undertook to drive out of business as independent manufacturers, and to that end sold and distributed licorice paste at greatly reduced prices and made special inducements to customers of their said competitors. That until the organization of the de-

fendant the American Tobacco Company, as aforesaid, the business policy of the MacAndrews & Forbes Company was conducted and directed by the said Continental Tobacco Company and by the defendant James B. Duke, and the several acts of the several defendants, their agents and servants, herein set forth and constituting the combination, conspiracy, and agreement in restraint of trade and commerce herein complained of, until the organization of the said the American Tobacco Company, were dictated and directed by the said Continental Tobacco Company and the said James B. Duke, and upon the merger of the Continental Tobacco Company into the defendant the American Tobacco Company, as aforesaid, it then acquired control of the MacAndrews & Forbes Company through ownership of a majority of the shares of the capital stock of said MacAndrews & Forbes Company having voting power, and thereafter the business policy of the said MacAndrews & Forbes Company was directed and controlled by the defendant the American Tobacco Company, through and by the defendant James B. Duke, as its president, and the several acts occurring thereafter of the several defendants, their agents and servants, herein set forth and constituting the combination, conspiracy, and agreement in restraint of trade herein complained of, were dictated and directed by the said the American Tobacco Company and by defendant the said James B. Duke, as its president.

"On or about October, 1903, under and pursuant to the direction and control, as aforesaid, of the Continental Tobacco Company and of said James B. Duke, an agreement was reached between the defendant MacAndrews & Forbes Company and the said J. S. Young Company of New Jersey, by which it was agreed that a new corporation was to be organized with the name 'J. S. Young Company' and $800,000 capital, to which the business of the old Young Company was to be transferred, and a large majority of the common stock, which alone had voting power, was to be issued to the MacAndrews & Forbes Company for no other consideration than its guaranteeing the annual sale of 5,000,000 pounds of licorice paste by the new Young Company, and guaranteeing payment of dividends of 6 per cent. on $500,000 of its preferred stock. Pursuant to this agreement, J. S. Young Company was organized on or about December, 1903, and on or about December 8, 1903, the defendant, MacAndrews & Forbes Company, then being controlled and directed by the Continental Tobacco Company and defendant James B. Duke, as aforesaid, in the manner herein set forth, and pursuant to such control and direction, and pursuant to said agreement between MacAndrews & Forbes Company and the J. S. Young Company of New Jersey, entered into and executed a written agreement with said J. S. Young Company, which written contract or agreement provided, among other things, for the acquisition by the said MacAndrews & Forbes Company of control of the defendant J. S. Young Company through the acquisition and ownership of a majority of the shares of stock of the defendant J. S. Young Company having voting power. That a true copy of said contract marked 'A' is annexed hereto and made part hereof. That pursuant to said contract defendant MacAndrews & Forbes Company acquired 2,000 shares of the capital stock of said J. S. Young Company, having a par value of $100 each, being a majority of the shares of capital stock of the J. S. Young Company having voting power, and from and after said date, and throughout said period, said contract was fully performed by the parties thereto, and the said defendant J. S. Young Company, although maintaining a separate corporate existence, came under the complete control of said MacAndrews & Forbes Company, whose officers issued orders and directions directly to the agents and servants of the said J. S. Young Company, which control continued through the said period hereinbefore mentioned.

"After the organization of the defendant J. S. Young Company, it announced and advertised itself to be independent of the said Continental Tobacco Company and said MacAndrews & Forbes Company, and of all trusts and combinations, and sought to and did mislead and defraud the public by falsely advertising, as aforesaid, that it was independent of and engaged in fair competition with other manufacturers of licorice paste, and after December 8, 1903, the said defendants, acting in concert and by agreement, and combining together as aforesaid, under the ultimate direction of the Continental Tobacco Company and James B. Duke, as aforesaid, from time to time raised the price

of said licorice paste to purchasers and consumers thereof in said trade and commerce. Thereafter, on or about December 31, 1903, the defendant J. S. Young Company, pursuant to the directions and control of the said Mac-Andrews & Forbes Company, and pursuant to the ultimate direction and control of the Continental Tobacco Company and defendant James B. Duke, as aforesaid, entered into a written contract with the said J. D. Lewis of Providence, R. I., wherein and whereby it was agreed that the amount of output of licorice by the said Lewis for the period of five years from the date thereof should be limited, and wherein and whereby the said J. S. Young Company was given power to regulate the price at which the said Lewis should sell the same said licorice paste and an interest in the profits made on his said business by Lewis, and wherein and whereby it was provided that the price for licorice paste, sold by the said Lewis should be always during said five years one-quarter of a cent per pound less than that sold by the said J. S. Young Company. That a true copy of said agreement, marked 'B' is annexed hereto and made part hereof. Thereafter, the said defendants, acting in concert with the said Lewis and by agreement and combining together, as aforesaid, and under the ultimate direction at first of said Continental Tobacco Company and thereafter of the American Tobacco Company and of said James B. Duke, as aforesaid, from time to time with said Lewis raised the price of said licorice paste to purchasers and consumers thereof in said trade and commence; the said prices for licorice paste being always as provided in and by the said agreements and contracts so fixed and arranged by said defendants. That the defendant MacAndrews & Forbes Company charged one-half a cent per pound for said licorice paste more than the said J. S. Young Company, and that the said J. S. Company charged always for said licorice paste one-quarter of a cent a pound more than the said J. D. Lewis. Thereafter, by agreement and concerted action also among the several defendants and the said J. D. Lewis, the said MacAndrews & Forbes Company and the said J. S. Young Company with said J. D. Lewis, and each of them, declined to sell to prospective purchasers of said licorice paste, including plaintiff, the full amount of the orders of such purchasers, but by such agreement and concert arbitrarily limited the amount which should be sold to any such customer or customers. Thereafter, on or about June, 1904, the said J. S. Young Company, still under the direction of defendant MacAndrews & Forbes Company, and under the ultimate direction of the Continental Tobacco Company and said James B. Duke, as aforesaid, entered into an agreement with the said Weaver & Sterry Company, Ltd., whereby it was agreed that the uniform minimum price of said Weaver & Sterry Company, Ltd., for said licorice paste should be fixed at 9½ cents per pound after July 1st of that year, and that no contracts for furnishing an indefinite quantity of said licorice paste to customers at that or any price should be made, and that such price agreement should continue until the close of the year 1906.

"The Continental Tobacco Company and defendants other than the American Tobacco Company, having thus acquired control of interstate trade and commerce in the United States in licorice paste, thereafter from time to time during said period and together with defendant the American Tobacco Company, after its organization, by concerted action between them and said J. D. Lewis and Weaver & Sterry Company, Ltd., raised the price of such paste, and in pursuance of said combination and conspiracy and agreement in restraint of trade, it was on or about July, 1904, and thereafter arranged and agreed by the Continental Tobacco Company and by said defendants and by the said J. D. Lewis and said Weaver & Sterry Company, Ltd., and each of them, and said arrangement and agreement thereafter carried out by concerted action by them, that the trade in said licorice paste should be apportioned as follows: As far as pre-existing contracts would permit, said MacAndrews & Forbes Company was thereafter to sell said licorice paste to no one but to the said the American Tobacco Company and said Continental Tobacco Company, and manufacturers controlled by or affiliated with them, and in the event that any other manufacturer attempted to buy from the said MacAndrews & Forbes Company, said MacAndrews & Forbes Company was to demand of such prospective customers a price for such licorice paste uniformly higher than that asked by any of the said other parties to said combination

and conspiracy, and thus induce such independent manufacturers to purchase their supplies or licorice paste of the said J. S. Young Company, J. D. Lewis, and Weaver & Sterry, Ltd., or some of them under a uniform form of contract as hereafter stated. It was further agreed and provided that defendant J. S. Young Company and said J. D. Lewis should offer to manufacturers of tobacco known as 'independent tobacco manufacturers,' i. e., manufacturers other than those controlled by or affiliated with the American Tobacco Company and the said Continental Tobacco Company as aforesaid, a uniform form of contract, being for two years, whereby the supply demandable by the manufacturer was fixed at a minimum, which he was obligated by said contract to take and a greater maximum beyond which he was not entitled to purchase licorice paste at 9¾ cents per pound from the said J. S. Young Company, and 9½ cents per pound from the said Lewis, and the price for said paste to be subject to increase for the second year. That a true copy of such proposed contract, omitting dates and names, amounts and prices, marked 'C,' is annexed hereto and made part hereof. That the persons with whom said Lewis could make this agreement or contract were fixed and determined upon by the defendant MacAndrews & Forbes Company, which instructed both the said Lewis and the defendant J. S. Young Company to sell to no customer whose requirements exceeded 20 cases of said licorice paste per annum, who failed to sign said form of contract, and it was further agreed among the said defendants, the said Continental Tobacco Company and the said Lewis and said J. S. Young Company, that very small consumers, i. e., those using less than 20 cases per year, might still obtain licorice paste at 10¼ cents per pound from Lewis or 10½ cents per pound from the said J. S. Young Company. That said last-mentioned agreement between defendants and John D. Lewis was carried into effect by defendants and John D. Lewis by apportioning said contracts for licorice paste as aforesaid, and by said MacAndrews & Forbes Company placing prohibitive prices upon said licorice paste, as aforesaid, to all customers who were so-called 'independent' tobacco manufacturers, and by said J. S. Young Company and said J. D. Lewis offering to customers who were independent manufacturers, including the plaintiff, said uniform form of contract, and requiring them to execute said contract as a condition of filling their orders for licorice paste."

As I look at this complaint, the most material allegation is the one wherein it is charged that John D. Lewis contracted and agreed with the J. S. Young Company that he would not sell more than 1,000,000 pounds of such licorice paste during the year 1904, nor more than 50,000 pounds additional during each year for five years from December 31, 1903, so that the total production of Lewis should not be more than 1,200,000 pounds during the year 1908. It would seem from this allegation of the complaint that it was a part of the agreement and combination that one person engaged in the manufacture and sale of licorice paste to various customers throughout the United States was not to sell more than the amount specified. If he lived up to his agreement and did not sell but a limited amount, that limited amount only would be shipped by him, and the result would be that a less amount of licorice paste sold by Lewis would pass from state to state. It does not follow, however, that there would be any restraint upon interstate commerce. There was no agreement or combination that a sufficient amount of licorice paste should not be manufactured and sold to fully supply the market and all demands therefor throughout the United States. The allegations of the complaint are, however, that, if Lewis did sell more than the amounts specified, then he was to pay to the J. S. Young Company an amount of money approximately equal to his profits upon the quantity sold by him in excess of such specified amounts.

I do not find in this complaint any direct allegation of a conspiracy, combination, contract, or agreement to restrain or interfere with interstate trade and commerce. It seems to have been a combination and conspiracy to monopolize the production of licorice paste and to establish and maintain arbitrary and noncompetitive prices for such article. The act of July 2, 1890, "An act to protect trade and commerce against unlawful restraints and monopolies" (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901 p. 3200]), provides that:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is hereby declared to be illegal."

Also:

"Every person who shall monopolize or attempt to monopolize, or combine, or conspire with any other person or persons to monopolize any part of the trade or commerce among the several states, or with foreign nations, shall be deemed guilty of a misdemeanor," etc.

And:

"Any person who shall be injured in his business or property by any other person or corporation by reason of anything forbidden or declared to be unlawful by this act may sue therefor," etc.

It is self-evident that the contract, combination, or conspiracy must be in its operation in restraint of trade or commerce among the several states or with foreign nations, or, if a monopoly or attempted monopoly or combination or conspiracy to monopolize, that it must be of some part of the trade or commerce among the several states or with foreign nations.

In United States v. E. C. Knight Company, 156 U. S. 1, 15 Sup. Ct. 249, 39 L. Ed. 325, the American Sugar Refining Company by means of a combination had obtained a practical monopoly of the business of manufacturing sugar, but the combination only related to the manufacture of sugar, and not to its sale, transportation, and delivery among the several states. Manufacture is no part of interstate or international commerce, even though the article manufactured is designed for ultimate sale and transportation to another state or transportation to and sale in another state. But the court said:

"Contracts to buy, sell, or exchange goods to be transported among the several states, the transportation and its instrumentalities, and articles bought, sold, or exchanged for the purpose of such transit among the states, or put in the way of transit, may be regulated; but this is because they form part of interstate trade or commerce. The fact that an article is manufactured for export to another state does not of itself make it an article of interstate commerce, and the intent of the manufacturer does not determine the time when the article or product passes from the control of the state and belongs to commerce."

Assume that the companies and individuals mentioned in the complaint here were engaged in the manufacture and production of licorice paste, that they were each engaged in selling and transporting their product to other states and to each of the other states, that one or more of them desired to monopolize the manufacture of such paste and to increase the price thereof and the cost thereof to the consumer, and that

an agreement was made by all whereby this privilege and power was conferred upon one or two of the companies. What has all this to do with interstate commerce? How does such an agreement or combination or monopoly have to do with interstate commerce or affect it? In the Knight Case, supra, the court said:

"Doubtless the power to control the manufacture of a given thing involves in a certain sense the control of its disposition, but this is a secondary and not the primary sense, and although the exercise of that power may result in bringing the operation of commerce into play, it does not control it, and affects it only incidentally and indirectly."

In Addyston Pipe & Steel Co. v. United States, 175 U. S. 211, at pages 240, 241, 242, 20 Sup. Ct. 96, at page 107, 44 L. Ed. 136, the court, in commenting on the Knight Case and in deciding the case then before it, said:

"The direct purpose of the combination in the Knight Case was the control of the manufacture of sugar. There was no combination or agreement, in terms, regarding the future disposition of the manufactured article—nothing looking to a transaction in the nature of interstate commerce. The probable intention on the part of the manufacturer of the sugar to thereafter dispose of it by sending it to some market in another state was held to be immaterial and not to alter the character of the combination. The various cases which had been decided in this court relating to the subject of interstate commerce, and to the difference between that and the manufacture of commodities, and also the police power of the states as affected by the commerce clause of the Constitution, were adverted to, and the case was decided upon the principle that a combination simply to control manufacture was not a violation of the act of Congress, because such a contract or combination did not directly control or affect interstate commerce, but that contracts for the sale and transportation to other states of specific articles were proper subjects for regulation because they did form part of such commerce. We think the case now before us involves contracts of the nature last above mentioned, not incidentally or collaterally, but as a direct and immediate result of the combination engaged in by the defendants. While no particular contract regarding the furnishing of pipe and the price for which it should be furnished was in the contemplation of the parties to the combination at the time of its formation, yet it was their intention, as it was the purpose of the combination, to directly and by means of such combination increase the price for which all contracts for the delivery of pipe within the territory above described should be made, and the latter result was to be achieved by abolishing all competition between the parties to the combination. The direct and immediate result of the combination was therefore necessarily a restraint upon interstate commerce in respect of articles manufactured by any of the parties to it to be transported beyond the state in which they were made. The defendants by reason of this combination could only send their goods out of the state in which they were manufactured for sale and delivery in another state, upon the terms and pursuant to the provisions of such combination. As pertinently asked by the court below, was not this a direct restraint upon interstate commerce in those goods?

"If dealers in any commodity agreed among themselves that any particular territory bounded by state lines should be furnished with such commodity by certain members only of the combination, and the others would abstain from business in that territory, would not such agreement be regarded as one in restraint of interstate trade? If the price of the commodity were thereby enhanced (as it naturally would be), the character of the agreement would be still more clearly one in restraint of trade. Is there any substantial difference where, by agreement among themselves, the parties choose one of their number to make a bid for the supply of the pipe for delivery in another state, and agree that all the other bids shall be for a larger sum, thus practically restricting all but the member agreed upon from any attempt to supply the de-

mand for the pipe or to enter into competition for the business? Does not an agreement or combination of that kind restrain interstate trade, and when Congress has acted by the passage of a statute like the one under consideration, does not such a contract clearly violate that statute? As has frequently been said, interstate commerce consists of intercourse and traffic between the citizens or inhabitants of different states, and includes not only the transportation of persons and property and the navigation of public waters for that purpose, but also the purchase, sale, and exchange of commodities. Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196–203, 5 Sup. Ct. 826, 29 L. Ed. 158; Kidd v. Pearson, 128 U. S. 1, 20, 9 Sup. Ct. 6, 32 L. Ed. 346. If therefore an agreement or combination directly restrains not alone the manufacture, but the purchase, sale, or exchange of the manufactured commodity among the several states, it is brought within the provisions of the statute. The power to regulate such commerce—that is, the power to prescribe the rules by which it shall be governed—is vested in Congress, and, when Congress has enacted a statute such as the one in question, any agreement or combination which directly operates, not alone upon the manufacture, but upon the sale, transportation, and delivery of an article of interstate commerce, by preventing or restricting its sale, etc., thereby regulates interstate commerce to that extent and to the same extent trenches upon the power of the national Legislature and violates the statute. We think it plain that this contract or combination effects that result."

I think this brings us to a consideration of the question whether the contracts, combination, and agreement set forth in this complaint relate to or have anything to do with the sale and transportation to other states of licorice paste, or the transportation to and sale in other states of such article. If so, did it act or operate, when carried out in whole or in part, to restrain or interfere with interstate commerce? If so, the agreement or combination was illegal within the terms of the act referred to.

An analysis of the agreement or combination shows as follows: (1) It was agreed by the defendants that there should be no competition in price for said licorice paste. (2) The defendants agreed from time to time upon and maintained arbitrary and noncompetitive prices for such paste. (3) They actually sold at such prices. (4) They agreed with and induced certain competitors in the business of making and selling such paste to establish and maintain arbitrary and noncompetitive prices. (5) Such prices were in excess of the normal prices that would have prevailed and in excess of reasonable and normal prices. (6) A division and apportionment of such interstate trade and commerce in licorice paste and of the customers of said MacAndrews & Forbes Company and said J. S. Young Company were made by them, by the terms of which division and apportionment the customers with whom each of said defendant corporations the MacAndrews & Forbes Company and the J. S. Young Company should deal and to whom the said two corporations should sell such licorice paste at such prices, and the amount of profits which the Young Company should be allowed from the total business carried on by the MacAndrews & Young companies was arbitrarily fixed by the Continental Company and the defendants. (7) The defendants so managed and agreed that John D. Lewis contracted with the Young Company that he would only sell 1,000,000 pounds during the year 1904, nor more than 50,000 pounds additional during each year for five years from December 31, 1903, and so that his total sales should not be more than 1,200,000 pounds

during the year 1908, but that if he sold more than the amounts specified then he was to pay the Young Company certain sums of money. There is no allegation of any agreement to cut down the production of licorice paste or the aggregate sales by all together or to interfere with or restrict shipments to any point. Sales by certain parties were confined to certain customers in certain localities of course.

It is not difficult for me to see how all this, if done, would interfere with or restrain, and to an extent at least regulate, interstate commerce. All customers were to be supplied, all orders filled, all shipments called for made, we will assume; but this contract or these contracts, these agreements, this combination was to increase prices beyond what was reasonable, and it related, not to this merely, but to sales and necessarily to the transportation of the merchandise. It determined, to an extent at least, the points from which shipments were to be made and the amounts of such shipments as were actually made, and so affected rates, etc.

Says Mr. Justice Peckham, in the Addyston Pipe Case, supra, referring to the Knight Case:

"And the case was decided upon the principle that a combination simply to control manufacture was not a violation of the act of Congress, because such a contract or combination did not directly control or affect interstate commerce, but that contracts for the sale and transportation to other states of specific articles were proper subjects for regulation because they did form part of such commerce."

He then stated that the case then before the court involved contracts of the nature last above mentioned, and said:

"While no particular contract regarding the furnishing of pipe and the price for which it should be furnished was in the contemplation of the parties to the combination at the time of its formation, yet it was their intention, as it was the purpose of the combination, to directly and by means of such combination increase the price for which all contracts for the delivery of pipe within the territory above described should be made, and the latter result was to be achieved by abolishing all competition between the parties to the combination. The direct and immediate result of the combination was therefore necessarily a restraint upon interstate commerce in respect of articles manufactured by any of the parties to it to be transported beyond the state in which they were made. The defendants by reason of this combination and agreement could only send their goods out of the state in which they were manufactured for sale and delivery in another state, upon the terms and pursuant to the provisions of such combination. As pertinently asked by the court below, was not this a direct restraint upon interstate commerce in those goods?"

It seems to me that the allegations of this complaint, discarding conclusions, state facts which, if true, show an illegal combination in restraint of interstate commerce within the Addyston Pipe Case, supra. That case is not on all fours with this, but the principles enunciated seem to cover this case. It is clear that the combination alleged went beyond mere manufacture and the fixing of arbitrary and exorbitant prices for the article so manufactured. As alleged, it related to sales of the product in different states and necessarily to the delivery thereof.

As to damages, it seems to me very clear that the allegations are ample. Assuming that the combination was illegal and in violation of the act referred to, the complaint says the defendants fixed arbitrary

and excessive and unreasonable prices, and that they raised the price from 7 to 10½ cents per pound, and that by reason of such combination, etc., the plaintiff was compelled to pay, and did pay, the excessive and unreasonable price for licorice paste. If the defendants by an illegal agreement and combination, in violation of the act, arbitrarily increased the price of this commodity to the consumers, the plaintiff amongst others, and made the price excessive and unreasonable and much greater than it would have been but for such combination, and the plaintiff was compelled to pay that unreasonable and excessive price and more than its actual value because of the illegal agreement or combination, and did pay it, he was clearly injured in his property thereby. Chattanooga Foundry v. City of Atlanta, 203 U. S. 390, 396, 27 Sup. Ct. 65, 66, 51 L. Ed. 241, where it is said:

"The facts gave rise to a cause of action under the act of Congress. The city was a person within the meaning of section 7 by the express provision of section 8. It was injured in its property, at least, if not in its business of furnishing water, by being led to pay more than the worth of the pipe. A person whose property is diminished by a payment of money wrongfully induced is injured in his property. The transaction which did the wrong was a transaction between parties in different states, if that be material. The fact that the defendants and others had combined with the seller led to the excessive charge which the seller made in the interest of the trust by arrangement with its members, and which the buyer was induced to pay by the semblance of competition, also arranged by the members of the trust."

I am of the opinion that the complaint states a cause of action, and that the demurrers should be overruled, with costs. On payment of costs within 30 days, the defendants may answer.