**CLARK OIL CO. et al. v. PHILLIPS PE-TROLEUM CO. et al.**

No. 12950.

Circuit Court of Appeals, Eighth Circuit.

April 11, 1945.

Ernest A. Michel, of Minneapolis, Minn. (Tom Davis, Carl L. Yaeger, and Fred Ossanna, all of Minneapolis, Minn., on the brief), for appellants.

David T. Searls, of Houston, Tex. (Vinson, Elkins, Weems & Francis, of Houston, Tex., and G. Aaron Youngquist and Fowler, Youngquist, Furber, Taney & Johnson, all of Minneapolis, Minn., on the brief), for appellees.

Before GARDNER, THOMAS, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal by plaintiffs from a judgment dismissing their action brought to recover damages for conspiracy in restraint of trade in violation of the Sherman Anti-Trust Act of July 2, 1890, c. 647, Sec. 1, 26 Stat. 209, Title 15 U.S.C.A. § 1. Judgment was entered on motion of defendants for summary judgment, on the ground that the complaint did not state facts sufficient to constitute a cause of ac-

tion. As amended, the complaint discloses the following pertinent facts.

Plaintiffs at all times in the complaint mentioned were jobbers of gasoline, oils and allied products. They buy in large quantities and resell to service station operators, who in turn sell to the consuming public. Defendant Phillips Petroleum Company supplied plaintiffs with the products used in their business. Other named defendants are manufacturing shippers and sellers of gasoline in the States of Michigan, Wisconsin, Minnesota, North Dakota, South Dakota, Iowa, Indiana, Missouri and Kansas. These named states comprise one of the great marketing zones or areas for gasoline in the United States, the area being commonly known as the Standard of Indiana territory, or the Mid-Western area. The handling and marketing of their products by the various defendants is in interstate commerce. Defendants, beginning in 1932 and continuously thereafter, conspired together to raise and did raise the spot market tank car prices of gasoline in the Mid-Western area, which included gasoline sold to plaintiffs, by approximately $2\frac{1}{4}$¢ per gallon higher than it would have been had not the price been artificially set. United States v. Socony-Vacuum Oil Co. et al., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129. During the times in the complaint mentioned plaintiffs purchased from the Phillips Petroleum Company some 6,273,660 gallons and they seek treble damages, costs of suit and reasonable attorneys' fees, which are recoverable by "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C.A. § 15. It is alleged that the exaction damaged plaintiffs by a sum equal to $2\frac{1}{4}$¢ per gallon purchased during the life of their contract with the Phillips Petroleum Company. The "spot market tank price" was determined by plaintiffs' contract with the Phillips Petroleum Company, the contract being attached to and by appropriate reference made a part of the complaint. Subject to certain contingencies not here material the Phillips Petroleum Company in effect guaranteed the plaintiffs a margin of $3\frac{1}{2}$¢ per gallon of profits on its gasoline handled by them.

A pre-trial conference took place for the purpose of clarifying the legal theory of damages upon which plaintiffs were proceeding. At that conference the following statements and admissions were made:

"Mr. Searls (counsel for defendants): It is my understanding, if the Court please, that Mr. Michel (counsel for plaintiffs) will state his claim of damages under the last complaint filed in this cause.

\* \* \* \* \* \* \*

"Mr. Michel: Mr. Searls, may I inquire at this time if it will not be admitted that the transaction in question was one in interstate commerce?

"Mr. Searls: The defendant does not question the fact that the gasoline purchased by the plaintiff in this case was shipped to them in interstate commerce.

"Mr. Michel: In response to the question of Mr. Searls, and also in view of the fact that an informal discussion was had with the Court today, I state that the position of the plaintiff in this case is that upon proof of the conspiracy alleged in the complaint and upon further proof that the conspiracy caused an increase in the price of gasoline of approximately two and one-quarter cents per gallon, or whatever figure the evidence might show, that when that showing has been made the plaintiff has proven his cause of action, and that what the plaintiff later did with the gasoline it purchased, or what became of it, is not material once the conspiracy and the overcharge under the conspiracy has been shown and established by the evidence. Now does that cover the point?

"Mr. Searls: I think that covers it. It is my understanding, Mr. Michel, that you are not claiming under this complaint that your margin of profit was lessened on gasoline bought and resold.

"Mr. Michel: That is correct, Mr. Searls, we are proceeding here upon what has been called in this proceeding and in the brief the 'illegal exaction theory,' that a cause of action existed immediately upon the conspiracy taking effect and increasing the price which the plaintiff had to pay for its gasoline over what it would have had to pay but for the existence and the carrying out of the conspiracy.

"Mr. Searls: It is correct to say that your claim of damages is based on gasoline that was bought and in fact resold in the ordinary course of business?

"Mr. Michel: Yes."

The trial court on the amended complaint and the pre-trial record, sustained the motion of defendants for a summary judgment in their favor. On this appeal the only question presented is whether the

amended complaint, alleging that plaintiffs were obligated to pay 2¼¢ per gallon more for gasoline because of a completed conspiracy by the defendants, supplemented by the pre-trial admissions by the parties that plaintiffs who were jobbers sold the gasoline in the usual course of business without loss of the margin of profit guaranteed by their contract with the Phillips Petroleum Company, warranted the court in entering summary judgment in favor of defendants. It is the contention of defendants that as plaintiffs were middlemen and jobbers, no damages resulted to them as it appears that the gasoline was all sold in due course and that the increase in price was passed on to their customers.

Plaintiffs are seeking, not compensation for damages suffered by defendants' illegal acts, but profits because of said acts. Wrong without damage or damage without wrong does not constitute a cause of private action, and it is not the purpose or intent of the law that damages shall be recoverable by two where only one has suffered injury. The Sherman Act and the Clayton Act afford a cause of action for those suffering damages. In their provisions for damages they embody both punitive and compensatory damages but no recovery can be had unless a case for compensatory damages is made. In the event of compensatory damages, then automatically the punitive damages follow. As said by us in Michelson Inc. v. Nebraska Tire & Rubber Co., 8 Cir., 63 F.2d 597, 601:

"The primary object of an award of damages in a civil action is just compensation, indemnity, or reparation for the loss or injury sustained."

Plaintiffs' right to recover from defendants is dependent upon both the buying and selling prices. Plaintiffs rely strongly upon the authority of Southern Pac. Co. v. Darnell-Taenzer Lbr. Co., 245 U.S. 531, 38 S.Ct. 186, 62 L.Ed. 451, and Adams v. Mills, 286 U.S. 397, 52 S.Ct. 589, 76 L.Ed. 1184. These were cases brought under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., to recover freight overcharges. The same authorities were cited and considered by this court in Twin Ports Oil Co. v. Pure Oil Co., 8 Cir., 119 F.2d 747, 750. In the opinion in that case it is said:

"There was Cox's testimony, however, that, as a result of this buying program, the tank car prices of gasoline had been raised by a little over two cents per gallon. Of course this could in any event re-sult in no damage to appellant, absent proof that its selling price was not correspondingly increased, and particularly since its contract with appellee protected the stability of its margins. Therefore, appellant was constrained to base its claim to recover upon rules announced in cases involving fundamentally differing enactments and distinctive grounds for relief. In this connection its counsel cite specifically Southern Pacific Co. et al. v. Darnell-Taenzer Lumber Co. et al., 245 U.S. 531, 38 S.Ct. 186, 62 L.Ed. 451, and Adams v. Mills, 286 U.S. 397, 52 S.Ct. 589, 76 L.Ed. 1184. * * *

"The mere fact that the existence of a conspiracy to raise prices is established is not sufficient ipso facto, to support a judgment for damages under the Sherman Act. This statute differs materially in its provisions from those of the Interstate Commerce Act which insure definite and specific recoveries for departures from published tariffs, and from payments of unreasonable and discriminatory freight rates. It is to be noted that here a recovery is sought for triple damages, a privilege that immediately suggests necessary definiteness in the basis of damages as attributable to the violation of the Federal Act."

The Interstate Commerce Act makes it incumbent upon the common carrier to publish rates and so that there shall be no preferences nor discriminations, the carrier is required to charge the rate as published and the shipper is required to pay that rate. If there has been an overcharge the excess may be recovered by the person paying the freight and this, under the Act, may be done as a matter of law without reference to pecuniary loss. Right of recovery under the Clayton Act, however, is dependent upon pecuniary loss or damage. In the excess freight rate cases plaintiff may recover the excess over the tariff rate, not as damages but as overcharges. In Pennsylvania R. Co. v. International Coal Mining Co., 230 U.S. 184, 33 S.Ct. 893, 898, 57 L.Ed. 1446, Ann.Cas.1915A, 315, the court said:

"* * * But the English courts make a clear distinction between overcharge and damages, and the same is true under the commerce act. For if the plaintiff here had been required to pay more than the tariff rate, it could have recovered the excess, not as damages, but as overcharge * * *."

Under the Clayton Act the right is not confined to persons in privity with the wrongdoer, but is given to anyone who has

suffered injury to his business or property by reason of the wrongful acts. Under this law a civil action may be maintained for "threefold the damages by him sustained." The right bottomed on the Interstate Commerce Act to recover the excess of freight paid over that specified in the published tariff, bears little analogy to the right to recover treble damages under the anti-trust laws. It more nearly resembles the right to recover damages conferred by Section 8 of the Act to Regulate Commerce, 49 U.S.C.A. § 8. Speaking of the right to recover damages under the anti-trust law, the Supreme Court in Keogh v. Chicago & North Western R. Co. et al., 260 U.S. 156, 43 S.Ct. 47, 50, 67 L.Ed. 183, said:

"* * * Under section 7 of the Anti-Trust Act [15 U.S.C.A. § 15 note], as under section 8 of the Act to Regulate Commerce [49 U.S.C.A. § 8], (Pennsylvania R. Co. v. International Coal Mining Co., 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446, Ann.Cas. 1915A, 315), recovery cannot be had unless it is shown, that, as a result of defendants' act, damages in some amount susceptible of expression in figures resulted. These damages must be proved by facts from which their existence is logically and legally inferable. They cannot be supplied by conjecture. To make proof of such facts would be impossible in the case before us. It is not like those cases where a shipper recovers from the carrier the amount by which its exaction exceeded the legal rate."

Though an action to recover a freight overcharge is in the nature of a tort (Lewis-Simas-Jones Co. v. Southern Pacific Co., 283 U.S. 654, 51 S.Ct. 592, 75 L.Ed. 1333), yet the amount of damages recoverable is fixed or is at least susceptible of being made certain by mathematical calculation, and hence, they are liquidated damages. On the other hand, an action to recover treble damages under the Clayton Act is based upon tort and the amount of compensatory damages which may be recovered can not be determined and is not fixed by statutory provisions, but the damages are unliquidated.

We think the decision of the trial court is in accord with the authorities. Farmers Coop. Oil Co. v. Socony-Vacuum Oil Co. et al., 8 Cir., 133 F.2d 101; Northwestern Oil Co. v. Socony-Vacuum Oil Co. et al., 7 Cir., 138 F.2d 967; Leonard v. Socony-Vacuum Oil Co., D.C., 42 F.Supp. 369; H. E. Miller Oil Co. v. Socony-Vacuum Oil Co., D.C. 37 F.Supp. 831; Gabbert et al. v. Atchison, T. & S. F. Ry. Co., 5 Cir., 93 F.2d 562; Keogh v. Chicago & North Western Ry. Co., supra. As the action to recover treble damages is not for the amount of the overcharge exacted, the "illegal exaction theory" of the freight rate cases is not applicable.

There being no basis for the recovery of compensatory damages, we are of the view that the trial court was correct in entering summary judgment in favor of the defendants, and the judgment appealed from is therefore affirmed.