**COMMONWEALTH EDISON COMPANY, et al., Plaintiffs,**

v.

**ALLIS–CHALMERS MANUFACTURING COMPANY et al., Defendants.**

Civ. A. Nos. 61C 1277, 61C 1284, 61C 1688, 61C 1695, 61C 2179, 61C 2186, 62C 18, 62C 19, 62C 40, 62C 41, 62C 55, 62C 56, 62C 87, 62C 188, 62C 262.

United States District Court
N. D. Illinois, E. D.
Dec. 17, 1963.

See also D.C., 211 F.Supp. 736.

Isham, Lincoln & Beale, Chapman & Cutler, Chicago, Ill., Lawyer, Friedrich, Petrie & Tweedle, Hammond, Ind., Paul G. Jasper, Plainfield, Ind., Stevenson, Dendtler & McCabe, Lord, Bissell & Brook, Bergstrom & Brizius, Wilson & McIlvaine, Chicago, Ill., for plaintiffs.

Stiefel, Greenberg, Burns & Baldridge, Kirkland, Ellis, Hodson, Chaffetz & Masters, Snyder, Chadwell, Keck, Kayser & Ruggles, Thompson, Raymond, Mayer, Jenner & Bloomstein, Dallstream, Schiff, Hardin, Waite & Dorschel, McBride, Baker, Wienke & Schlosser, Sonnenschein, Lautmann, Levinson, Rieser, Carlin & Nath, Chicago, Ill., for defendants.

ROBSON, District Judge.

These treble damage antitrust actions are a part of the suits which have been brought throughout the nation as a result of the criminal antitrust prosecutions in Philadelphia of certain electrical equipment manufacturers. They include all the claims currently pending in this district for purchases by investor-owned utilities of steam turbine-generators and power transformers, two of the nineteen product lines involved in these suits. Defendants served plaintiffs with twenty-four interrogatories which probe in detail the economics of plaintiffs' businesses. Defendants contend that these interrogatories are "designed to elicit facts establishing the extent to which plaintiffs have 'passed on' to others the purported excess charges paid for electrical equipment. * * * "[1]

Plaintiffs have objected to the interrogatories *in toto*. The parties filed briefs and oral argument was heard by the Court. For purposes of the argument, the Court assumes that part of any increased costs were "passed on" to consumers of electricity. Plaintiffs assert that any evidence of such "passing on" which defendants might adduce would be irrelevant and inapplicable as a matter of law to the suits in these product lines. The Court concludes that in view of the peculiar facts of these cases, plaintiffs' objections are well taken and should be sustained.

Here, as in the usual case, the legal concept of proximity is applicable to ascertain and measure damages. Thus, the necessary and appropriate limits of judicial inquiry are served by disregarding consequential and remote effects. As analyzed by Mr. Justice Holmes, the general rule of the law is to take only the first step and discover di-

1. Defendants' Brief in Opposition to Plaintiffs' Objections to Defendants' Pass On Interrogatories, at p. 1 (filed November 12, 1963).

rect effects on the parties.[2] This principle was recently re-enunciated and applied to these cases by the Court of Appeals for this Circuit.[3]

The "passing on" doctrine is a narrow exception to this general trend of the law. It has received judicial acceptance primarily in the so-called Oil Jobber cases [4] which involved middlemen and in which the legal "pass on" was readily apparent from an immediate change in the resale price.[5] Similar facts are not present here. Plaintiffs in these cases are investor-owned utility companies who purchase capital equipment, fuel, supplies and manpower which they use to produce and/or distribute electricity. The purchase of electrical equipment for immediate resale is no part of their business.[6] Any "pass on" of alleged overcharges for capital equipment is buried in the myriad details of plaintiffs' rate bases and would be extremely difficult to compute.

Plaintiffs in the Oil Jobber cases were jobber-distributors who resold gasoline to stations at margins which were fixed and often guaranteed by defendants. Defendants were members of a group of oil companies who had been convicted of fixing the spot price of gasoline in the so-called "Madison Oil" case.[7] The *ad damnum* sought was treble the amount of the illegal overcharge. Plaintiffs were uniformly denied relief on the grounds that the damages had been "passed on" to their customers. The Oil Jobber cases thus required plaintiffs as part of their showing of damages to demonstrate that they had ultimately borne any increased costs.[8]

2. "The general tendency of the law, in regard to damages at least, is not to go beyond the first step. As it does not attribute remote consequences to a defendant so it holds him liable if proximately the plaintiff has suffered a loss." Southern Pacific Company, et al. v. Darnell-Taenzer Lumber Company, et al., 245 U.S. 531, 533–34, 38 S.Ct. 186, 62 L.Ed. 451 (1917).

3. Commonwealth Edison Co., et al. v. Allis-Chalmers Manufacturing Co., et al., 315 F.2d 564, 567 (C.A.7, 1963), cert. den. Illinois v. Com. Edison Co., 375 U.S. 834, 84 S.Ct. 64, 11 L.Ed.2d 64 (Oct. 14, 1963).

4. The following is a partial listing of the Oil Jobber cases: Northwestern Oil Co. v. Socony-Vacuum Oil Co., Inc., et al., 138 F.2d 967 (C.C.A.7, 1943), cert. den. 321 U.S. 792, 64 S.Ct. 790, 88 L.Ed. 1081 (1944); Leonard v. Socony-Vacuum Oil Co., Inc., et al., 42 F.Supp. 369 (W.D. Wis., 1942), appeal dismissed, 130 F.2d 535 (C.C.A.7, 1942); Twin Ports Oil Co. v. Pure Oil Co., 119 F.2d 747 (C.C.A. 8, 1941), cert. den., 314 U.S. 644, 62 S. Ct. 84, 86 L.Ed. 516 (1941); Farmers Co-op. Oil Co. v. Socony-Vacuum Oil Co., Inc., et al., 133 F.2d 101 (C.C.A.8, 1942); Clark Oil Co. et al. v. Phillips Petroleum Co., et al., 148 F.2d 580 (C.C.A.8, 1945); H. E. Miller Oil Co. v. Socony-Vacuum Oil · Co., Inc., et al., 37 F.Supp. 831 (E.D.Mo., 1941); McCain v. Socony-Vacuum Oil Co., Inc., et al., 64 F.Supp. 12 (W.D.Mo., 1945).

5. Except for the Oil Jobber cases, and two more recent cases, Kidd v. Esso Standard Oil Company, 295 F.2d 497 (C.A.6, 1961) and Freedman, et al. v. Philadelphia Terminals Auction Co., 301 F.2d 830 (C.A.3, 1962), cert. den., 371 U.S. 829, 83 S.Ct. 40, 9 L.Ed.2d 67 (1962), the Court has discovered no case in which "passing on" was the sole decisional ground for denying plaintiff's claim. Each of these cases involved middlemen and a readily apparent "pass on" of any increased costs to their customers.

6. "As far as we are concerned, we are prepared to state on affidavit that we have not bought and resold any new steam turbine generators or any new power transformers * * *." Statement by Mr. Nicholson, counsel for Commonwealth Edison group of plaintiffs, transcript of hearing of December 2, 1963, at p. 7.

7. United States v. Socony-Vacuum Oil Co., Inc., et al., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940).

8. E. g., plaintiff's burden was outlined as follows in the Northwestern Oil case, 138 F.2d 967, 971 (C.C.A.7, 1943): "In other words the Clayton Act does not permit recovery by plaintiff in causes such as this for unlawful prices as such but authorizes recovery only of pecuniary loss to property or business. The one complaining need not sue the person to whom he has paid the illegal prices. He may recover from any member of the conspiracy, if he shows that the direct effect is to injure

The Court of Appeals for the Seventh Circuit has indicated an entirely different test by which plaintiffs must demonstrate their damages in the instant cases. "The damages, if any, to which they [the utilities] are entitled are measured by the hurt they may have suffered by reason of the alleged conspiracies claimed to be violative of the antitrust laws. That hurt is measured by the excessive prices they claim were paid for equipment purchased from defendants. * * * " [9] This measurement of plaintiffs' damages appears to make evidence of "pass on" entirely irrelevant to these cases.

The Oil Jobber cases are distinguishable in at least five other important respects. (1) Plaintiffs in those cases were true middlemen; here they are consumers. The "pass on" defense was limited to suits on behalf of middlemen in the recent case of Hanover Shoe, Inc. v. United Shoe Machinery Corporation,[10] (treble damage action by manufacturer of shoes against lessor of shoe manufacturing equipment). (2) The parties in those cases were more closely related than the usual buyer and seller. Often the defendants guaranteed plaintiffs' profit margins.[11] In these cases ordinary buyer-seller relationships exist. (3) Whereas the jobbers resold the gasoline intact, the utilities use the equipment to produce and/or distribute electricity.[12] (4) The risks cast on the jobbers by higher gasoline prices were *de minimus* and short term. In contrast the risks which would be created for the utilities by higher equipment prices could be significant and would extend over the lives of the capital equipment involved. (5) Finally, gasoline consumers were thought to have independent rights under the antitrust laws to bring suits against the oil companies which could negate the existence of such rights in the middlemen.[13] On the other hand, the consumers of electricity apparently have no such rights.[14] This last distinction leads to two undesirable results if "passing on" is sustained. First, defendants would be left with the profits of their alleged wrongdoing. This is directly contrary to the general equitable principle that no man should be allowed to profit by his wrongdoing. Second, the purpose of Sec-

---

him in his business or property and produces facts from which such injury may be ascertained. Inasmuch as plaintiff has wholly failed to prove any loss to its property or business but rather has shown, by all reasonable inferences, that the increased costs of which it complained was passed on to the ultimate consumer, the court rightfully directed a verdict for defendant. * * * "

9. Commonwealth Edison Co., et al. v. Allis-Chalmers Manufacturing Co., et al., 315 F.2d 564, 567 (C.A.7, 1963), cert. den. Illinois v. Com. Edison Co., 375 U.S. 834, 84 S.Ct. 64, 11 L.Ed.2d 64 (Oct. 14, 1963).

10. 185 F.Supp. 826 (M.D.Pa., 1960), aff'd per curiam, 281 F.2d 481 (C.A.3, 1960), cert. den., 364 U.S. 901, 81 S.Ct. 234, 5 L.Ed.2d 194 (1960).

11. See e. g., the following language in Clark Oil Co., et al. v. Phillips Petroleum Co., et al., 148 F.2d 580, 581 (C.C.A.8, 1945): "Subject to certain contingencies not here material the Phillips Petroleum Company in effect guaranteed the plaintiffs a margin of 3½¢ per gallon of profits on its gasoline handled by them."

12. Hanover Shoe, Inc. v. United Shoe Machinery Corporation, 185 F.Supp. 826 (M.D.Pa., 1960), aff'd per curiam, 281 F.2d 481 (C.A.3, 1960), cert. den., 364 U.S. 901, 81 S.Ct. 234, 5 L.Ed.2d 194 (1960).

13. This is suggested by Clark Oil Co., et al. v. Phillips Petroleum Co., et al., 148 F.2d 580, 582–83 (C.C.A.8, 1945): "Under the Clayton Act the right is not confined to persons in privity with the wrongdoer, but is given to anyone who has suffered injury to his business or property by reason of the wrongful acts."

14. "The alleged conspiracies spent themselves on these purchasers. The after-effects of the hurt on the consumers are consequential and too remote for the consumers to gain rights against the conspirators." Commonwealth Edison Co., et al. v. Allis-Chalmers Manufacturing Co., et al., 315 F.2d 564, 567 (C.A.7, 1963), cert. den., Illinois v. Com. Edison Co., 375 U.S. 834, 84 S.Ct. 64, 11 L.Ed. 2d 64 (Oct. 14, 1963).

tion 4 of the Clayton Act [15] would be frustrated because there would be no available private remedy even though a private injury had in fact occurred.[16]

Defendants in their brief [17] place strong emphasis on the following language in Keogh v. Chicago & Northwestern Railway Company, et al.,[18] as additional support for the "passing on" defense:

> "Finally, * * * recovery cannot be had unless it is shown, that, as a result of defendants' acts, damages in some amount susceptible of expression in figures resulted. * * * [N]o court or jury could say that, if the rate had been lower, Keogh would have enjoyed the difference between the rates or that any other advantage would have accrued to him. The benefit might have gone to his customers, or conceivably, to the ultimate consumer."

The sole question for decision in Keogh was "[W]hether there is a cause of action under § 7 of the Anti-Trust Act," [19] or whether plaintiffs' sole remedy lies under the Interstate Commerce Act. The Court's discussion of damages and "passing on" was thus not required by the holding in the case and does not act to bind this Court. In any event the above quoted language on damages is directly contrary to the philosophy of plaintiffs' burden as expressed in more recent Supreme Court Cases. Eastman Kodak Co. of New York v. Southern Photo Materials Company; [20] Story Parchment Company v. Paterson Parchment Paper Company, et al.; [21] Bigelow, et al. v. R.K.O. Radio Pictures, Inc., et al.[22]

The Court's decision on this matter is based primarily on the binding precedent of the well known Chattanooga case.[23] The City of Atlanta which operated a waterworks brought a treble damage action against a group of pipe companies. Recovery was sought for an amount based on the difference between a fair market price and the allegedly higher fixed price which the City asserted it had been forced to pay for pipe because of defendants' conspiracy. The factual similarities of Chattanooga to the instant cases are strikingly apparent. In Chattanooga, the City, acting as a utility, purchased capital equipment; here the electric companies similarly purchased capital equipment for use in their utility business. In both cases purchases at prices allegedly higher than fair market prices were the bases for the suits. The measure of plaintiff's damages outlined by Mr. Justice Holmes in the Chattanooga opinion is identical to the standard applied to these cases by the Court of

15. 15 U.S.CA. § 15.

16. Miller Motors, Inc. v. Ford Motor Company, 252 F.2d 441 (C.A.4, 1958); Banana Distributors, Inc. v. United Fruit Company, et al., 162 F.Supp. 32 (S.D.N.Y., 1958) rev'd on other grounds, 269 F.2d 790 (C.A.2, 1959); Beacon Fruit & Produce Co., Inc., et al. v. H. Harris & Co., Inc., et al., 160 F.Supp. 95 (D. Mass., 1958) aff'd per curiam, 260 F.2d 958 (C.A.1, 1958), cert. den., Goldman v. H. H. & Co., 359 U.S. 984, 79 S.Ct. 942, 3 L.Ed.2d 933 (1959); and Freedman, et al. v. Philadelphia Terminals Auction Co., supra, which were discussed in defendants' brief at pp. 9–14, all involved suits by middlemen and are thus analogous to the Oil Jobber suits and distinguishable from these cases. This Court disagrees with the dictum in Wolfe v. National Lead Co., et al., 225 F.2d 427 (C.A. 9, 1955), cert. den., 350 U.S. 915, 76 S.Ct. 198, 100 L.Ed. 802 (1955) that plaintiff, a manufacturer of paint, must show it had not "passed on" to its customers any increased cost of materials. Wolfe will not be followed here for the reasons set forth in this memorandum.

17. At pp. 5–14.

18. 260 U.S. 156, 164–165, 43 S.Ct. 47, 50, 67 L.Ed. 183 (1922).

19. Id., at p. 161 of 260 U.S., at p. 49 of 43 S.Ct., 67 L.Ed. 183.

20. 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927).

21. 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931).

22. 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652 (1946).

23. Chattanooga Foundry and Pipe Works v. City of Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906).

Appeals in Commonwealth Edison Co., et al. v. Allis-Chalmers Manufacturing Company, supra. It is the difference between the fair market value and the alleged conspiratorially fixed price:

"It was injured in its property, at least, if not in its business of furnishing water, by being led to pay more than the worth of the pipe. A person whose property is diminished by a payment of money wrongfully induced is injured in his property. * * * But when a man is made poorer by an extravagant bill we do not regard his wealth as a unity, or the tort, if there is one, as directed against that unity as an object. We do not go behind the person of the sufferer. We say that he has been defrauded or subjected to duress, or whatever it may be, and stop there. * * * " 24

The damage rule of Chattanooga was applied in private antitrust cases involving the so-called "tobacco trust" which were decided several years later. See e. g., Monarch Tobacco Works v. American Tobacco Co., et al.,25 and United States Tobacco v. American Tobacco Co., et al.26 Both of these cases were treble damage suits by a manufacturer of tobacco products against his suppliers. Both times the court overruled defendants' demurrers and applied the Chattanooga standard of damages. The discussion in United States Tobacco is particularly appropriate:

"As to damages, it seems to me very clear that the allegations are ample. Assuming that the combination was illegal and in violation of the act referred to, the complaint says the defendants fixed arbitrary and excessive and unreasonable prices, and that they raised the price from 7 to 10½ cents per pound, and that by reason of such combination, etc., the plaintiff was compelled to

pay, and did pay, the excessive and unreasonable price for licorice paste. If the defendants by an illegal agreement and combination, in violation of the act, arbitrarily increased the price of this commodity to the consumers, the plaintiff amongst others, and made the price excessive and unreasonable and much greater than it would have been but for such combination, and the plaintiff was compelled to pay that unreasonable and excessive price and more than its actual value because of the illegal agreement or combination, and did pay it, he was clearly injured in his property thereby. * * * " 27

In the subsequent case of Thomsen v. Cayser,28 the Supreme Court allowed a treble damage recovery to shippers from carriers based on increased shipping costs. Defendants' contention that plaintiffs had failed to show injury was rejected as untenable without explicit consideration of "passing on".

Straus, et al. v. Victor Talking Machine Co., et al.,29 a treble damage action by retailers against supplier for unreasonable refusal to sell at "dealers' price," provides additional support for the conclusions reached in this memorandum. The following language in Straus states concisely the showing plaintiff must make to demonstrate his damages in the usual price fixing case:

"Whether, then, plaintiffs sold to their customers at a profit or a loss. becomes immaterial in this case. They were entitled to goods at the reasonable price thereof. Through no legal fault of theirs, but because of defendants' wrong, they were deprived of their right, and the jury could find that such deprivation defined in money was the difference between the established reasonable price and the amounts plaintiffs.

24. Id., at pp. 396 and 399 of 203 U.S., at pp. 66–67 of 27 S.Ct., 51 L.Ed. 241.

25. 165 F. 774 (C.C.W.D.Ky., 1908).

26. 163 F. 701 (C.C.S.D.N.Y., 1908).

27. Id., at pp. 711–712 of 163 F.

28. 243 U.S. 66, 37 S.Ct. 353, 61 L.Ed. 597 (1917).

29. 297 F. 791 (C.C.A.2, 1924).

were compelled to pay, provided as the trial judge charged 'they acted reasonably in making these payments.' * * * It is thus unnecessary to 'go beyond' this 'first step.' " [30]

The "pass on" defense was recently rejected in this District in a treble damage suit based on Section 2(d) of the Robinson-Patman Act.[31] Chief Judge Campbell, in State Wholesale Grocers, et al. v. Great Atlantic and Pacific Tea Company, et al.,[32] expressed his agreement with Hanover Shoe, supra, in this way:

> "The Third Circuit, as recently as 1960, affirmed a district court's ruling that the 'pass on' defense was not meritorious. Hanover Shoe, Inc. v. United Shoe Machinery Corp. * * * I agree with the Third Circuit's description of the district court's opinion in that case as being thoroughly convincing, and I am in full accord with the reasoning employed by Judge Goodrich in his opinion and the authorities therein cited." [33]

The factual similarities of the instant cases to the binding precedent of Chattanooga, supra, the measure of damages applied to these cases by the Court of Appeals in Commonwealth Edison Co. v. Allis-Chalmers Manufacturing Co., et al., supra, and the numerous significant distinctions as set forth herein from the Oil Jobber cases, supra, have persuaded the Court to sustain plaintiffs' objections to defendants' "pass on" interrogatories.

The Court certifies that it is of the opinion that this memorandum is a ruling upon a controlling and important question of law in these proceedings, namely, whether plaintiffs should be required to answer detailed interrogatories which have been designed to elicit facts on the extent to which plaintiffs have "passed on" the alleged excess charges paid by them for electrical equipment, an issue which goes to the heart of these controversies. The Court is further of the opinion that an immediate appeal from this order will materially advance the ultimate termination of these proceedings and that this situation is particularly appropriate for the type of interlocutory appeal provided by Section 1292(b).[34] Plaintiffs are directed to submit to the Court within seven days from the date hereof a draft order in conformance with this memorandum.

---

30. Id., p. 803, of 297 F.

31. 15 U.S.C.A. § 13(d).

32. 202 F.Supp. 768 (N.D.Ill., 1961).

33. Id., p. 777 of 202 F.Supp.

34. 28 U.S.C.A. § 1292(b).