**HANOVER SHOE, INC., Plaintiff,**

v.

**UNITED SHOE MACHINERY CORPORATION, Defendant.**
**Civ. A. No. 5395.**

United States District Court
M. D. Pennsylvania.
Feb. 12, 1960.

---

Ralph M. Carson, of Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, Warren, Hill, Henkelman & McMenamin, Scranton, Pa., for defendant.

Breck P. McAllister, of Donovan, Leisure, Newton & Irvine, New York City, Nogi, O'Malley & Harris, Scranton, Pa., for plaintiff.

GOODRICH, Circuit Judge.

This is an action based on the provisions of Section 4 of the Clayton Act [1] to recover treble damages for alleged injury resulting from claimed violation of Section 2 of the Sherman Act, 15 U.S.C.A. § 2, by defendant. Following pre-trial conferences Judge Murphy, prior to his illness, ordered, and counsel for the respective parties agreed to, trial of a sepa-

1. "§ 15. Suits by persons injured; amount of recovery.

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C.A. § 15.

rate issue which, in the words of the order, "may be dispositive of the case." This procedure was based on Fed.R.Civ. P. 42(b), 28 U.S.C.A. The order reads in part as follows:

"Ordered that there be tried as a separate issue in advance of trial of the other issues in this action the issue as to whether the excessive shoe machinery costs alleged by plaintiff and denied by defendant constituted an injury to plaintiff's business or property in that:

"(a) plaintiff contends that (1) all said excess machinery costs were borne by it because as a matter of law it suffered injury at the moment it paid said excess costs and (2) the facts will demonstrate that said excess costs were absorbed by it and were not reflected in adjustments of the price of shoes made with said machinery; and

"(b) defendant contends that all alleged excess costs have been passed on by plaintiff to others and thus have not been borne by plaintiff * * *."

Also included in the order was the provision that the determination of the issue to be tried should "not involve the determination of the amount of plaintiff's recoverable damage, if any." It was also provided that this separate trial should be "without prejudice to plaintiff's demand for a jury upon the general trial of this action if such general trial be required." Most important for the purpose of discussion here was a further provision that the determination of the separate issue shall proceed upon the assumption "(1) that the violation of law as alleged existed, and (2) that the excessive cost of shoe machinery as alleged existed." The decree in United States v. United Shoe Machinery Corp., D.C.D. Mass.1953, 110 F.Supp. 295, affirmed per curiam 1954, 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910, can also be relied on in accordance with Section 5 of the Clayton Act.[2]

The plaintiff's complaint charges that defendant, as a result of its unlawful control of the market, has caused plaintiff, a manufacturer of shoes, to pay excessive rentals for the lease of shoe machinery. The defendant, so far as issues here before the Court are concerned, says that, even assuming that we charged you too much, you have no basis for complaint because you passed on any excessive charges to the people to whom you sold shoes. Therefore, not being injured, you have no basis for complaint in a civil action however much we may have violated the antitrust laws. To this the plaintiff replies that it is not a seller of shoe machinery but a user of it. Its product, it says, is a machine-made shoe which it in turn sells mostly to a wholly-owned subsidiary corporation which operates a chain of retail stores throughout the United States. While it is true, says plaintiff, that we show a profit during the years wherein we claim to have paid monopolistic prices and while it is also true that our prices have gone up during this period, that price rise is a result of competition in the shoe market and has nothing to do with the excessive rental fees we have paid to defendant. A thick transcript of testimony as well as an elaborate stipulation bears on this question. The plaintiff invites the Court to make findings of fact in accordance with the proposition just asserted.

■■ The Court's conclusion is that such findings of fact need not be made because they are unnecessary. Based upon the assumption, contained in the April

---

2. "§ 16. Judgment in favor of Government as evidence; limitation of actions

"A final judgment or decree rendered in any criminal prosecution or in any suit or proceeding in equity brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto. * * *" 15 U.S. C.A. § 16.

1957 order, defendant was guilty of a violation of law and did charge plaintiff an excessive price for the lease of the machinery. The Court thinks that this creates a cause of action for the difference between what plaintiff was charged and what it could properly have been charged in the absence of the monopolistic practices. This, it appears to the Court, is a straight application of sound principles of tort law with which, when stated in the abstract, probably no one would disagree. The defendant has been, by hypothesis, guilty of liability-creating conduct. Such conduct is liability-creating because (1) it violates the Sherman Act, and (2) the Clayton Act gives one injured by the violation a cause of action. As a result of the violation the plaintiff had to pay an excessive price for the use of machinery. This excessive price is the injury. The causal relation between defendant's wrong and plaintiff's harm is obvious. If there are affirmative defenses or other complicating legal issues, they are not before the Court at this time.[3]

We turn now to the argument that the defendant is relieved of liability because the plaintiff passed on its loss to its customers. The Court thinks this argument is invalid; otherwise, it would be necessary to go into the evidence concerning the factual accuracy of the argument. The plaintiff's injury occurred when it was charged too much for the machinery. If it had not thus been illegally charged for machinery it would have had more money to pay out in dividends, or to engage in a further development campaign to sell its shoes, or to raise the wages of its employees, or to enlarge its bank account as protection against a rainy day, or for all of these things. The plaintiff against whom a tort is committed has his cause of action at the moment that the tort occurs. Of course, he is subject to the rule of avoidable consequences and cannot sit still and let damages pile up when reasonable steps would have prevented further consequential damages.[4] But that is the extent of his obligation. Things which happen later and let an injured plaintiff escape some of the ultimate consequences of the wrong done him do not inure to the benefit of the defendant. Thus, if a man is injured by the negligence of another and has the good fortune to have an insurance policy which recompenses him for loss, the insurance money does not reduce the damages which the wrongdoer must pay.[5] If friends of a man against whom a tort is committed make up a purse to pay for his medical services, that does not cut down what the plaintiff may recover from the tortfeasor.[6] Wages continued by an employer during a time when an injured man is not working do not redound to the benefit of the wrongdoer.[7] And, likewise, if a man having sustained an injury works extra hard after his recovery and comes out at the end of the year as financially well off as he would have been with-

---

3. The situation here is analogous to a plaintiff's action for damages sustained as a result of a defendant's negligence. All of the elements of such a cause of action are present here. Thus there is (1) a legal duty on defendant's part (to obey the antitrust laws), (2) a violation of that duty, (3) a causal connection between the violation of that duty and any harm that plaintiff may have suffered, and (4) actual harm to the plaintiff (the excessive rentals paid). See Prosser, Torts § 35 (2d ed. 1955). Cf. Restatement, Torts § 281 (1934). Before this Court is an easy case measured by these standards since there is no problem of causation and defendant's misconduct was intentional, not merely negligent.

4. McCormick, Damages § 33 (1935).

5. McCormick, Damages § 90 at 324 (1935) and cases cited therein; Restatement, Torts § 920, comment e (1939); Annotation 13 A.L.R.2d 355 (1950); 26 Fordham L.Rev. 380, 381–82 (1957).

6. McCormick, Damages § 90 at 324 (1935) and cases cited therein; Restatement, Torts § 924, comment f (1939); Annotation 128 A.L.R. 686 (1940).

7. McCormick, Damages § 87 at 310 (1935) and cases cited therein; Restatement, Torts § 920, comment e (1939); Annotations 18 A.L.R. 678 (1922), 95 A.L.R. 575 (1935); 26 Fordham L.Rev. 380, 382–83 (1957).

out the loss of time, the wrongdoer cannot claim reduction of damages on this account.

As Mr. Justice Holmes said in Southern Pac. Co. v. Darnell-Taenzer Lumber Co., 1918, 245 U.S. 531, 533, 38 S.Ct. 186, 62 L.Ed. 451, a case in which a unamimous Supreme Court rejected a defense contention that plaintiff had not been injured since it had been able to pass on the excess charges to its customers:

"The general tendency of the law, in regard to damages at least, is not

to go beyond the first step. As it does not attribute remote consequences to a defendant so it holds him liable if proximately the plaintiff has suffered a loss." [8]

Each side has cited a number of antitrust cases. Defendant says that plaintiff's cases [9] are not in point because the issue of passing on the loss was not raised in them. Plaintiff says that the cases cited by defendant [10] are either wrong or that they are distinguishable for two reasons. One, plaintiff says, is that those cases involved middlemen who were sell-

---

8. Although Darnell-Taenzer was a suit to enforce a reparation order of the Interstate Commerce Commission brought under Section 16(2) of the Interstate Commerce Act, 49 U.S.C.A. § 16(2), and that section makes the findings and order of the Commission "prima facie evidence of the facts therein stated," this Court sees no good reason why the rationale set forth by Mr. Justice Holmes therein should not be equally applicable to a treble-damage action under the Clayton Act. See also Louisville & N. R. R. v. Sloss-Sheffield Co., 1925, 269 U.S. 217, 46 S.Ct. 73, 70 L.Ed. 242; Adams v. Mills, 1932, 286 U.S. 397, 52 S.Ct. 589, 76 L.Ed. 1184. Cf. Pennsylvania R. Co. v. International Coal Mining Co., 1913, 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446.

9. Principal reliance is placed on Chattanooga Foundry & Pipe Works v. City of Atlanta, 1906, 203 U.S. 390, 27 S. Ct. 65, 51 L.Ed. 241 and Thomsen v. Cayser, 1917, 243 U.S. 66, 37 S.Ct. 353, 61 L.Ed. 597. Plaintiff also relies upon Story Parchment Co. v. Paterson Parchment Paper Co., 1931, 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 and Straus v. Victor Talking Mach. Co., 2d Cir., 1924, 297 F. 791.

10. Defendant bottoms its contention on the "oil jobber" cases decided in the Seventh and Eighth Circuits: Twin Ports Oil Co. v. Pure Oil Co., 8 Cir., 119 F. 2d 747, certiorari denied 1941, 314 U.S. 644, 62 S.Ct. 84, 86 L.Ed. 516; Leonard v. Socony-Vacuum Oil Co., D.C.W.D. Wis., 42 F.Supp. 369, appeal dismissed on other grounds 7 Cir., 1942, 130 F. 2d 535; Northwestern Oil Co. v. Socony-Vacuum Oil Co., 7 Cir., 1943, 138 F.2d 967, certiorari denied 1944, 321 U.S. 792, 64 S.Ct. 790, 88 L.Ed. 1081; Clark Oil Co.

v. Phillips Petroleum Co., 8 Cir., 148 F. 2d 580, certiorari denied 1945, 326 U.S. 734, 66 S.Ct. 42, 90 L.Ed. 437.

These cases were all an outgrowth of the convictions of various oil companies for having illegally fixed and raised tank car prices of gasoline, which were upheld in United States v. Socony-Vacuum Oil Co., 1940, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129. The various plaintiffs were jobbers who resold the gasoline that they bought from defendant oil companies; their treble-damage actions were based on the increased cost to them. Recovery was denied on the ground that the plaintiffs had failed to show that they had been injured by the increased cost.

The plaintiff-jobbers in Twin Ports and Clark Oil had contracts with the defendant oil companies which guaranteed that the jobbers would pay for gasoline a fixed amount per gallon below the service station price (which was determined by the market-leader, Standard Oil of Indiana). Thus, absent a showing that the illegal price fixing caused plaintiffs to sell less gasoline, an excessive increase in the price paid by the jobbers could not possibly harm them for the service station price per gallon would be increased accordingly. In Leonard the court held that, in light of Twin Ports, it would place upon plaintiff the burden of pleading that there had not been a corresponding increase in its selling price as its purchase price increased. In Northwestern the court held that the plaintiff had the burden of proving lack of such an increase and that all reasonable inferences led to the conclusion that as the price to plaintiff increased the price to its customers increased to the same extent.

The "oil jobber" cases have been criticized. See Clark, The Treble Damage

ing a product supplied for resale by a Sherman Act violator whereas plaintiff here is simply a lessee of equipment which sells its own product.[11] Second, it says, the "oil jobber" cases are quite different because the jobbers suffered no loss since, by the terms of their agreements, they were guaranteed a fixed margin per gallon sold; therefore, the original impact of the pecuniary loss never fell on the jobbers at all. Although the second distinguishing characteristic does not appear to hold true in the Leonard and Northwestern cases (see note 10 supra), this Court feels that the first distinction made by plaintiff is sufficient.[12] Furthermore, this Court disagrees with the dictum in Wolfe (note 12 supra) and agrees with Professor Clark (note 11 supra at 404) that where the plaintiff is a consumer of the product, rather than a middleman who resells it, he may recover the excess paid whether or not he has

ultimately passed the excess along to his customers. Plaintiff herein was such a consumer.

On the issue presented on the separate trial the Court finds for plaintiff. Defendant's motion to dismiss is accordingly denied. The Court does not, of course, purport to fix the pecuniary amount of plaintiff's loss.

■ The issue presented on this separate trial is one which involves a controlling question of law as to which there is substantial ground for difference of opinion; an immediate appeal may materially advance the ultimate termination of this litigation. Thus, the case is an appropriate one for an interlocutory appeal under 28 U.S.C.A. § 1292(b) and a certificate to that effect will be granted upon application by defendant. Otherwise the case shall proceed to trial on the other issues involved.

Bonanza: New Doctrines of Damages in Private Antitrust Suits, 52 Mich.L.Rev. 363, 404–06 (1954); Comment, 61 Yale L.J. 1010, 1022–23 (1952); Comment, 18 U.Chi.L.Rev. 130, 135–38 (1950).

11. See Clark, The Treble Damage Bonanza: New Doctrines of Damages in Private Antitrust Suits, 52 Mich.L.Rev. 363, 404–06 (1954) for the importance of this distinction. See also Donovan & Irvine, Proof of Damages Under the Anti-Trust Law, 88 U.Pa.L.Rev. 511 (1940) (written by two senior members of the firm representing plaintiff in the instant case, but written well before this action ever came into being and, in fact, prior to the "oil jobber" decisions).

12. Defendant also relies upon language in Wolfe v. National Lead Co., 9 Cir., 225 F.2d 427, 432–433, certiorari denied 1955, 350 U.S. 915, 76 S.Ct. 198, 100 L. Ed. 802, to the effect that a manufacturer who, because of a Sherman Act violation, pays a higher price for a raw material then he would have had to pay in a competitive market is not entitled to recovery in a treble-damage action unless he shows that he did not pass on such higher prices to his customers. Additional reliance is placed on Miller Motors, Inc. v. Ford Motor Co., 4 Cir.,

1958, 252 F.2d 441, 448, where the court, citing Wolfe and the "oil jobber" cases, said that, even if a Sherman Act violation resulted in increased automobile prices, a dealer in those automobiles could not recover because the higher prices were passed on to the consumer. The language relied on is dictum; in Wolfe there was no showing that the manufacturer paid any more for the raw material then he would have in a competitive market; in Miller Motors the court found that the Sherman Act had not been violated. In addition, Miller Motors is like the "oil jobber" cases in that the plaintiff there was a middleman who was paying a higher price for a product which it resold; it was not the ultimate consumer of the excessively-priced product.

In a later treble-damage case, Flintkote Co. v. Lysfjord, 9 Cir., 246 F.2d 368, 389–390, certiorari denied 1957, 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46, the Court of Appeals for the Ninth Circuit, while relying on Wolfe for other propositions, made no reference at all to the dictum relied upon by defendant in the instant case and found that damages were proven when plaintiff showed that he paid a higher price for his supplies as a result of the antitrust violation.