Samuel FREEDMAN, James A. Collinson, Charles Dankel, Charles H. Davis, Sam Gorberg, Sidney L. Hyman, James F. Pontari, Israel Robinson and Max Robinson, Individually and Trading as Robinson Bros., E. J. Rosengarten, Tim Wolf, Jack Zeitz, Individually and on Behalf of All Other Similarly Situated Members of the Philadelphia Fruit Auction Buyers' Association

v.

PHILADELPHIA TERMINALS AUCTION CO., a New Jersey Corporation,

Samuel Freedman, Charles J. Dankel and Emanuel J. Rosengarten, Appellants.

No. 13670.

United States Court of Appeals.
Third Circuit.

Argued Dec. 19, 1961.

Decided April 9, 1962.

Walter Stein, Philadelphia, Pa. (Berger & Stein, Philadelphia, Pa., Frank H. Gelman, Philadelphia, Pa., on the brief), for appellants.

Sidney L. Wickenhaver, Philadelphia, Pa. (Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., C. Brewster Rhoads, Thomas N. O'Neill, Jr., Philadelphia, Pa., T. Ewing Montgomery, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

This suit originated as a spurious class action brought by twelve members of the Philadelphia Fruit Auction Buyers' Association, an unincorporated association, seeking individually and on behalf of other members of the association to recover treble damages [1] from defendant, Philadelphia Terminals Auction Company, for an alleged violation of Section 2(c) of the Clayton Act, as amended by the Robinson-Patman Act.[2] The trial was limited to the claims of plaintiffs Samuel Freedman, Charles Dankel and Emanuel J. Rosengarten.

Freedman and Dankel are brokers who purchase fruit at defendant's auctions on behalf of regular clients. They pay the purchase price to defendant and bill their clients for the amount paid plus their commission of five or ten cents per box of fruit. Rosengarten is primarily a wholesaler. He purchases at defendant's auctions for his own account, reselling the fruit to customers at his store.

By its special verdict,[3] the jury found that defendant had not violated Section 2(c) and that plaintiffs had not been injured in their business or property by reason of the alleged violation. Plaintiffs appeal from the Order of the District Court denying their Alternative Motion for Judgment Notwithstanding the Verdict or New Trial.[4] The material

1. Suit was brought under Section 4 of the Clayton Act, 15 U.S.C.A. § 15, which provides:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

2. Section 2(c) provides:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid." 49 Stat. 1527, 15 U.S.C.A. § 13(c).

The complaint also alleged violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2, and included two common law counts. During trial, each of these charges was either dismissed or withdrawn.

3. The special verdict was as follows:

"1. Were the terminal charges received or accepted by defendant from the plaintiffs 'as a commission, brokerage or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, * * * to an agent, representative or intermediary' in such transaction who 'was acting in fact for or in behalf or (was) subject to the direct or indirect control of' the receivers?

(yes or no)   No

"2. Were the following plaintiffs injured in their business or property by reason of the receipt or acceptance by defendant of the terminal charges?

| | | |
|---|---|---|
| Charles Dankel | (yes or no) | No |
| Samuel Freedman | (yes or no) | No |
| E. J. Rosengarten | (yes or no) | No |

"3. What was the amount of the injury to the following plaintiffs?

| | |
|---|---|
| Charles Dankel | $ None |
| Samuel Freedman | $ None |
| E. J. Rosengarten | $ None" |

4. The District Court certified its Order for appeal under 28 U.S.C. § 1292(b) and also directed the entry of final judgment under Rule 54(b), Fed.R.Civ.P., 28 U.S.C. We granted plaintiffs' application for permission to appeal under 28 U.S.C. § 1292(b).

The Opinion of the District Court is reported at 197 F.Supp. 849 (E.D.Pa.

facts, as disclosed by the record may be summarized as follows:

Defendant operates the only auction market in the Philadelphia area through which fresh fruit arriving via railroad from various states, primarily Florida, California, Washington and Oregon, is sold at wholesale in less than carload lots. The fruit arrives in Philadelphia, consigned by the growers and shippers to their Philadelphia representatives, who are known in the trade as "receivers". Through auction sales conducted by defendant, the receivers sell the fruit for distribution in the Philadelphia market area, which includes parts of Pennsylvania, New Jersey and Delaware. Defendant remits to the receivers or their principals the amount of the sales less defendant's commission. Defendant also deducts the freight charges, which it remits to the railroads on behalf of the receivers. Although the freight bills are made out by the railroads in the names of the receivers, the railroads have traditionally presented these bills to defendant for payment.

From November 1948 until October 1956 the railroads, pursuant to permission granted by the Interstate Commerce Commission, imposed, in addition to freight charges, a charge for unloading the fruit from the railroad cars. These unloading charges were based on tonnage and, like the freight charges, were billed by the railroads in the names of the receivers but were paid by defendant. Defendant did not, however, deduct the amount of the unloading charges from its remittances to the receivers. Instead, it collected from the auction buyers a "terminal charge" of a specified amount per box of fruit. Defendant's president testified that the decision to institute the terminal charges was made without consulting the receivers or their principals. A schedule of terminal charges applicable to the various types of fruit was announced by defendant prior to the insti-

tution of the charges in November, 1948, and a schedule of reduced charges was announced when the Interstate Commerce Commission required the railroads to reduce the unloading charges in 1952. The terminal charges were discontinued in 1956 when the Commission ordered the discontinuance of the unloading charges. The terminal charges collected by defendant exceeded the amounts paid by defendant to the railroads as unloading charges. The difference, which was retained by defendant, ranged from a low during the first six months of 1952 of 10.56 percent of terminal charges collected from all buyers, to a high in 1955 of 27.77 percent.

Plaintiffs brought this suit on November 17, 1955, contending that the collection of the terminal charges was violative of Section 2(c). The trial judge ruled that because of the statute of limitations, plaintiffs' claims must be limited to the six-year period preceding the filing of the complaint. During this period Freedman paid terminal charges of $14,810; · Dankel, $17,853; and Rosengarten, $55,867.

As stated earlier, the jury found that defendant had not violated Section 2(c) and that plaintiffs had not been injured in their business or property by reason of the alleged violation. On the score of injury to plaintiffs, there was evidence from which the jury could reasonably conclude that plaintiffs passed on to their clients and customers the amount of the terminal charges and that the charges did not result in a reduction in the volume of plaintiffs' business. It was undisputed that Freedman and Dankel, when they billed their clients for the purchase price of the fruit, included in these statements the amount of the terminal charges. In fact, after 1952, when terminal charges on certain types of fruit were 3½ cents and 4½ cents per box, Freedman and Dankel, with the consent of their clients, billed these charges at 4 cents and 5 cents respectively, thus

1961); see also 145 F.Supp. 820 (1956) (opinion denying defendant's Motion to Dismiss Complaint); 198 F.Supp. 429

(1961) (memorandum on defendant's Motion to Review Clerk's Taxation of Costs).

making a profit on them. Rosengarten, who bought on his own account for resale,[5] testified that it had been his practice during all the years he had been in business to try to resell at a mark-up of twenty-five to thirty-five cents per box above the total of the cost of the fruit and the expense of hauling it to his store and that during the period when terminal charges were in effect he included them in computing the resale price that would have to be obtained in order to realize the desired mark-up. On this score his business records show that his profit margins were higher during the period when terminal charges were in effect than they were prior to that time.

On this appeal, plaintiffs contend (1) the collection of the terminal charges, or at least that part which was retained by defendant, violated section 2(c); and (2) plaintiffs are entitled to recover the amounts thus illegally collected by defendant.

In disposing of this appeal it is unnecessary for us to rule on the first of plaintiffs' contentions, viz., that the collection of the terminal charges violated Section 2(c), in view of the jury's finding that plaintiffs suffered no injury by reason of their payment of the charges. As earlier stated there was ample evidence to sustain the jury's finding in this respect and by the terms of Section 4 of the Clayton Act,[6] injury to "business or property" is an essential ingredient of right to recovery of damages for conduct forbidden by the antitrust laws.

Plaintiffs contend that despite the jury's finding of no injury, they are nevertheless entitled to recover the terminal charges that they paid. They rely on the case of Hanover Shoe, Inc. v. United Shoe Machinery Corp., 185 F.Supp. 826 (M.D.Pa.1960), aff'd per curiam, 281 F.2d 481 (3 Cir. 1960), cert. denied, 364 U.S. 901, 81 S.Ct. 234, 5 L.Ed.2d 194 (1960), in which a shoe manufacturer sued a lessor of shoe manufacturing machinery to recover damages allegedly resulting from a claimed violation of Section 2 of the Sherman Act, 15 U.S.C.A. § 2. It was there claimed that as a result of defendant's unlawful control of the market, the plaintiff had paid excessive rentals under a shoe machinery lease. The defendant contended that the plaintiff had not been injured inasmuch as it had passed along to its customers, via its pricing, the excessive rental charges.

Hanover affords no nourishment to plaintiffs' contention with respect to it. There the District Court in granting relief to the plaintiff premised its action on its fact-finding that plaintiff was a *consumer* and not a *middleman* and implicit in that distinction is its subscription to the doctrine enunciated in earlier cases [7] that middlemen cannot recover damages where they suffer no injury by reason of their payment of proscribed charges.

In Hanover the District Court found valid the plaintiff's contention that it was "simply a lessee of equipment which sells its own product" and was not a middleman "selling a product supplied for resale." In doing so the District Court said:

"[T]his Court feels that the * * * distinction made by plaintiff is sufficient. Furthermore, this Court * * * agrees with Professor Clark * * * that where the

---

5. Although Rosengarten was primarily a wholesaler, about five per cent of his purchases were made by him as a broker. With respect to these purchases, he billed his clients for the terminal charges together with the purchase price.

6. See Note 1, supra.

7. Miller Motors, Inc. v. Ford Motor Co., 252 F.2d 441 (4 Cir. 1958); Northwestern Oil Co. v. Socony-Vacuum Oil Co., 138 F.2d 967 (7 Cir. 1943), cert. denied,

321 U.S. 792, 64 S.Ct. 790, 88 L.Ed. 1081 (1944); Leonard v. Socony-Vacuum Oil Co., 42 F.Supp. 369 (W.D.Wis.1942), appeal dismissed, 130 F.2d 535 (7 Cir. 1942); Twin Ports Oil Co. v. Pure Oil Co., 119 F.2d 747 (8 Cir. 1941), cert. denied, 314 U.S. 644, 62 S.Ct. 84, 86 L. Ed. 516 (1941); Clark Oil Co. v. Phillips Petroleum Co., 148 F.2d 580 (8 Cir. 1945), cert. denied, 326 U.S. 734, 66 S. Ct. 42, 90 L.Ed. 437 (1945).

plaintiff is a consumer of the product, rather than a middleman who resells it, he may recover the excess paid whether or not he has ultimately passed the excess along to his customers. *Plaintiff herein was such a consumer.*" (Emphasis supplied) 185 F.Supp. at 831.

■ In the instant case the testimony clearly established that Freedman and Dankel acted as brokers and Rosengarten was a wholesaler who simply resold the product which he purchased at the auctions. All three, as previously stated, passed along to their outlets the terminal charges complained of.[8] Not by any stretch of the imagination can they be classified as consumers.

For the reasons stated the judgment in favor of defendant and against the plaintiffs Samuel Freedman, Charles Dankel and E. J. Rosengarten, with costs, filed May 3, 1961, and the Order of the District Court of that date denying said plaintiffs' motions for judgment n. o. v. and/or a new trial will be affirmed.

8. Kidd v. Esso Standard Oil Company, 295 F.2d 497 (6 Cir. 1961).