STATE OF WASHINGTON et al.

v.

AMERICAN PIPE & CONSTRUCTION CO. et al.

Civ. A. No. 3157, W. D. Wash., S. D.

WASHINGTON PUBLIC POWER SUPPLY SYSTEM

v.

AMERICAN PIPE & CONSTRUCTION CO. et al.

Civ. A. No. 6568, W. D. Wash., N. D.

STATE OF OREGON et al.

v.

AMERICAN PIPE & CONSTRUCTION CO. et al., and all related cases.

Civ. A. No. 65–266, D. Or.

STATE OF HAWAII et al.

v.

AMERICAN PIPE & CONSTRUCTION CO. et al.

Civ. A. No. 2360, D. Hawaii.

SACRAMENTO MUNICIPAL UTILITY DISTRICT

v.

KAISER STEEL CO. et al.

Civ. A. No. 9160, E. D. Cal.

EAST BAY MUNICIPAL DISTRICT et al.

v.

KAISER STEEL CO. et al., and all related cases.

Civ. A. No. 42929, N. D. Cal.

UNITED STATES of America et al.

v.

AMERICAN PIPE & CONSTRUCTION CO. et al., and all related cases.

Civ. A. No. 64–832, C. D. Cal.

CITY OF SAN DIEGO et al.

v.

AMERICAN PIPE & CONSTRUCTION CO. et al., and all related cases.

Civ. A. No. 3396, S. D. Cal.

United States District Court

Sept. 14, 1967.

See also D.C., 41 F.R.D. 59.

Stanley E. Disney, Barbara J. Svedberg, Antitrust Division, Dept. of Justice, San Francisco, Cal., for plaintiff.

Ferguson & Burdell, Seattle, Wash., for end-user plaintiffs.

George W. Jansen, San Diego, Cal., for defendants.

PENCE, Chief Judge.

## MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PURCHASES MADE THROUGH AN INTERMEDIARY

Plaintiffs in the above-captioned actions are seeking recovery under the antitrust laws (Title 15 U.S.C. § 15) for injuries allegedly sustained as a result of price fixing by the manufacturers of concrete and steel conduit pipe. Defendant American Pipe & Construction Co. (American), contending "that plaintiffs have no standing to sue for damages allegedly resulting from sales of pipe to

anyone other than themselves * * * who [may] in turn [have] sold to the plaintiffs projects which included that pipe",[1] moved for summary judgment pursuant to Rule 56, F.R.Civ.P., on all claims based on purchases in which plaintiffs and defendant were not in privity of contract. On September 7, 1967, after hearing, the court orally denied defendant's motion. This memorandum decision augments and sets forth in greater detail the basis for that ruling.

In implementing a project for the installation of pipe lines or other construction work that might include pipe, the normal procedure of the plaintiffs was to award a single contract for the project. Frequently plaintiffs had direct consultations with defendant concerning a particular project prior to awarding the contract. Mr. C. David Herlihy, defendant's Vice-President for Marketing, has described this process:

"In most every instance that I can recall in my experience the agency for whom the pipeline was being designed, or the agency doing the design work, would call upon us for estimating prices. We might have furnished estimating, or we did furnish—I'll put that quite definitely—we did furnish estimating prices to projects which were in the feasibility stage of study, and then later on, preliminary design phases, and later, final design; and in many, many cases the estimating prices that we figured in response to their specific request for them, and in terms of the designs which they presented to us even in a preliminary way to evaluate, were worked out as carefully as any final prices that we would—any final estimate that we would make in terms of our own quotation."[2]

General contractors in bidding for the right to perform a project, of course included a pipe quotation in the bid, and, if the successful bidder, independently purchased pipe and "resold" it to plaintiffs as part of the completed job. Generally the pipe used was specifically designed and manufactured by defendant for and to conform with plaintiffs' project specifications. Normally the contractors would but incorporate defendant's quotations in their bids, and purchase the pipe only when awarded a contract. Defendant was fully aware of and participated in this procedure.

As previously ruled at the oral hearing, defendant's motion for a summary judgment must fail. The antitrust laws provide that *"any person * * * injured in his business or property * * * "* (emphasis added)[3] may seek redress for the alleged antitrust violation. Within the limitation that the "litigant must of course show he was proximately and not incidentally damaged * * * ",[4] anyone who falls "within that area of the economy which is endangered by a breakdown of competitive conditions * * * "[5] may recover. In *Karseal*, supra n. 4, the plaintiff manufacturer of automobile polish asserted injury resulting from Richfield's practices which precluded independent service stations from handling Karseal's products. The Ninth Circuit denied Richfield's motion to dismiss even though plaintiff sold through distributors, and not directly to the gasoline stations which were allegedly forced to boycott Karseal's wax:

"Primarily the operation and effect of the illegal practices was on the products (including Karseal's wax) which were competitive to the Richfield sponsored products. The impact was on the market. The gist of the

---

1. Memorandum of Points and Authorities in Support of Motion of Defendant American Pipe and Construction Co. for Partial Summary Judgment Under Rule 56 of the Federal Rules of Civil Procedure, page 1 (dated July 11, 1967).

2. Deposition of C. David Herlihy at page 79 (dated December 6, 1966).

3. Title 15 U.S.C. § 15.

4. Karseal Corporation v. Richfield Oil Corporation, 221 F.2d 358, 365 (9 Cir. 1955).

5. Conference of Studio Unions v. Loews Inc., 193 F.2d 51, 55 (9 Cir. 1951), cert. denied 342 U.S. 919, 72 S.Ct. 367, 96 L. Ed. 687 (1952).

violation was the prevention or impeding of the sale of these competitive products. Logically, and as found in the findings and conclusions of the trial judge in the Richfield case, the illegal acts were directed against the manufacturers and distributors of the competing products, including Karseal's wax. Such persons and such products were the 'target' of the illegal practices.

" * * * Apparently, Richfield's argument is in part, that the independent distributors of Karseal's Wax might have a cause of action, but that Karseal is once removed from the distributors and therefore may not sue. We need not pass on whether such distributors have a cause of action. But it would appear that both the manufacturer and the independent distributor have such a cause of action. * * * Classes or categories effected by a statute must rest on a realistic basis. To say to a manufacturer of wax that he may have the protection of the antitrust laws in private litigation if he hires salesmen for his product, and not have such protection if he decides to contract with a distributor, would appear to be an unequal application of the law and unjustified dictation as to how he operated his business." 221 F.2d at 364–365.

In a more recent opinion the Ninth Circuit elaborated upon this "target" area concept, Twentieth Century Fox Film Corporation v. Goldwyn, 328 F.2d 190, 220 (9 Cir. 1964):

"Discussing what it meant by 'target area,' this court, in Karseal, referred to it as a factor in determining whether there was proximate causation. At two places in that opinion, there is language indicating that one was not in the 'target area' unless he was 'aimed at' by the conspirators.

"But in using the words 'aimed at' this court did not mean to imply that it must have been a purpose of the conspirators to injure the particular individual claiming damages. Rather, it was intended to express the view that the plaintiff must show that, whether or not then known to the conspirators, plaintiff's affected operation was actually in the area which it could reasonably be foreseen would be affected by the conspiracy."

■ As heretofore indicated, it was standard procedure for defendant to consult with, and thereafter tailor its pipe to the specifications of, the ultimate purchaser, i. e., plaintiffs here. American knew the specific jobs for which contractors placed orders for pipe, and willingly participated in the sales chain with knowledge that plaintiffs would eventually obtain title to and use that pipe. Plaintiffs here are clearly within the "area which it could reasonably be foreseen would be affected by the [defendant's alleged] conspiracy." They constitute "a recognizably small enough class to enforce the antitrust law",[6] and each is entitled to recover insofar as it can establish causation and injury.

■ Defendant American has referred the court to numerous cases which allegedly preclude recovery by these plaintiffs,[7] and, relying thereon, contends

6. Statement of counsel for American at oral hearing.

7. E. g., Southern Pacific Co. v. Darnell-Taenzer Co., 245 U.S. 531, 38 S.Ct. 186, 62 L.Ed. 451 (1918) ; Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 315 F.2d 564 (7 Cir. 1963) ; Hanover Shoe, Inc. v. United Shoe Machinery Corp., 185 F.Supp. 826 (M.D.Pa.1960) aff'd per curiam, 281 F.2d 481 (3 Cir. 1960), cert. denied 364 U.S. 901, 81 S.Ct. 234, 5 L.Ed.2d 194 (1960) ; Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 335

F.2d 203 (7 Cir. 1964) ; Loeb v. Eastman Kodak Co., 183 F. 704 (3 Cir. 1910) ; Gerli v. Silk Association of America, 36 F.2d 959 (S.D.N.Y.1929) ; Productive Inventions, Inc. v. Trico Products Corp., 224 F.2d 678 (2 Cir. 1955), cert. denied, 350 U.S. 936, 76 S.Ct. 301, 100 L.Ed. 818 (1956) ; Volasco Products Co. v. Lloyd A. Fry Roofing Co., 308 F.2d 383 (6 Cir. 1962), cert. denied, 372 U.S. 907, 83 S.Ct. 721, 9 L.Ed.2d 717 (1963) ; Snow Crest Beverages, Inc. v. Recipe Foods, Inc., 147 F.Supp. 907 (D.Mass. 1956) ; United Copper Sec. Co. v. Amal-

that the alleged conspiracy spent itself on the contractors, so that any injury to the "end-users", i. e., plaintiffs here, is too inconsequential and remote to support a cause of action. Defendant asserts the law only takes the "first step"[8] in awarding damages, and that the first step here leads to and stops with the contractors. Not alone does this argument conflict with the language in *Karseal*, supra, to the effect that both the manufacturer and independent distributor would fall within the area of the economy endangered by a breakdown of competitive conditions, but also, none of the cases relied on by American are factually analogous to the instant situation. There are, however, three reported opinions with a similar factual basis: Armco Steel Corp. v. State of North Dakota, 376 F.2d 206 (8 Cir. 1967); State of Missouri v. Stupp Bros. Bridge & Iron Co., 248 F.Supp. 169 (W.D.Mo. 1965); and State of Washington v. General Electric Co., 246 F.Supp. 960 (W.D. Wash.1965). This court now does but apply Judge Boldt's decision in *State of Washington* where the product purchased through a contractor was electrical equipment:

> "[T]his Court is unwilling to deny plaintiff its right to sue merely because it purchased the equipment through a third party rather than directly from the manufacturer." 246 F.Supp. at 962.

Defendant has also raised the specter of double liability if sued by the general contractors.[9] Defendant's argument does nothing more than present this court with a hypothetical question concerning the allocation of provable injury, not with that of the standing necessary to maintain a cause of action. However, the question of the contractor's standing to sue is not presented here for decision, and this court does not reach that issue.[10]

## CERTIFICATION

At the conclusion of the court's oral ruling on September 7, 1967, American orally moved for an order certifying this question for interlocutory appeal pursuant to Title 28 U.S.C. § 1292(b).[11]

The court denied defendant's motion, holding that under *Karseal, Twentieth Century Fox Film Corp.*, and *State of Washington v. General Electric*, supra, the law on the subject is well settled in the Ninth Circuit[12] and this question therefore does not present substantial ground for difference of opinion.

Defendant's motions (1) for summary judgment and (2) for certification are denied.

---

gamated Copper Co., 232 F. 574 (2 Cir. 1916) ; Miley v. John Hancock Mut. Life Ins. Co., 148 F.Supp. 299 (D.Mass. 1957) aff'd per curiam, 242 F.2d 758 (1 Cir. 1957), cert. denied 355 U.S. 828, 78 S.Ct. 38, 2 L.Ed.2d 41 (1957) ; Ames v. American Telephone & Telegraph Co., 166 F. 820 (D.Mass.1909).

8. Southern Pacific Co. v. Darnell-Taenzer Co., supra n. 7.

9. Reply Brief of Defendant American Pipe & Construction Co. in Support of Its Motion for Partial Summary Judgment (Indirect Purchaser) at pp. 10–11 (dated August 11, 1967).

10. Cf., however, *Karseal*, supra.

11. "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." etc.

12. (as well as in the Eighth Circuit, viz.: Armco Steel Corp. v. North Dakota, supra)